## J. R. JONES v. THE STATE.

No. 13507. Delivered April 15, 1931.
State's Rehearing Denied February 3, 1932.

The opinion states the case.

*Mathis & Caldwell,* of Wichita Falls, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

*Jack Blalock,* of Marshall, amicus curiae.

MORROW, Presiding Judge.—The offense is the violation of the Game Law; penalty assessed at a fine of $10.

The information contains two counts. In the first count it is charged that the appellant did then and there unlawfully take, catch and have in his possession a bass fish taken from the fresh waters of this state; in the second count it is charged that he did then and there unlawfully take, catch and have in his possession a bass fish less than eleven inches in length.

The trial was had before the court without a jury, and the judgment recites that the appellant was found guilty upon both counts.

The statutes (articles 931 and 933, P. C., 1925) upon which the conviction rests read as follows:

"Whoever shall take or catch from the fresh waters of this State, or have in his possession any bass of less length than eleven inches or any white perch or crappie of less than seven inches shall be fined not less than ten nor more than one hundred dollars."

"Any person who shall take or catch or have in possession any bass or crappie from the fresh waters of this State during the months of March or April of any year; or shall take, catch or have in possession

any bass of less length than eleven inches, or any white perch or crappie of less than seven inches, shall be deemed guilty of a misdemeanor, and on conviction shall be fined a sum of not less than ten ($10.00) dollars nor more than one hundred ($100.00) dollars."

The following is a summary of the facts: On the 21st day of March, 1930, J. R. Jones caught a bass in a tank located upon what is known as the Guthrie place. It was privately owned by W. D. Guthrie, and was not subject to overflow from rivers and other streams within the borders of the state. The fish was less than eleven inches in length. The tank had been constructed by building a dam across a small ravine and filled with surface water only, which said surface water did not come from any rivers or other streams or from any public water course in the state. The water with which the tank is supplied arises and develops upon the farm upon which it is located and belongs to W. D. Guthrie. Appellant had permission from Guthrie, the owner of the tank, to fish therein and keep the fish that he caught therefrom. The tank was not a rearing pond for fish, and there is no act or order from the Fish and Oyster Commission prohibiting fishing in the particular tank.

Elaborate briefs have been filed exhibiting research and thought and citing many precedents.

The state contends that the evidence shows an offense under articles 931 and 933, supra.

In the case of Graves v. Dunlap et al., 87 Wash., 648, 152 P., 532, 533, L. R. A., 1916C, 338, Amer. & Eng. Ann. Cas., 1917B, p. 944, Graves was the owner of a farm. A doe with a broken leg came into his enclosure. She was placed in a stall and cared for until her recovery. Subsequently a buck was given to Graves. There was an increase. From time to time, bucks from the city park were, by permission, allowed to mingle with those upon the farm. By increase and by gifts from friends, there was a herd of twenty deer upon Graves' farm in 1913. They were kept in an enclosure of about 15 or 20 acres, surrounded by a high woven wire fence. They grazed on his pasture and at times were fed by Graves. In his enclosure Graves had certain fowls, including swans, wood ducks and pheasants. Some of the fowls cost Graves considerable money and he kept them within the enclosure.

The issue involved in the appeal was the question whether the property of Graves in the deer and fowls was absolute or whether the state had a right to regulate them under a statute for that purpose in which it was stated that no person shall have in his possession or under his control any of the wild animals mentioned in the statute. The right of Graves to the possession of the animals and fowls mentioned free from interference under the statute mentioned was upheld. In as much as there was no issue as to the intent of Graves to kill the animals and birds, no decision was made upon that subject. The questions are liberally dis-

cussed in detail and many precedents are cited. The general principles are quoted as follows:

"While animals *ferea naturae* belong to the state, as indicated, yet, when they are reclaimed by the art and power of man, they are the subject of property, and a property right thereto may be acquired. In 2 Cooley, Torts (3rd ed.), p. 838, the author says:

" 'There is no property in wild animals until they have been subjected to the control of man. If one acquires and tames them, they are his property; if he does not take them, they are still his so long as they are kept confined and under his control'.

. "Animals *ferea naturae,* if reclaimed and kept in enclosed ground, are property which will pass to the executors and administrators of a deceased person. In Dieterich v. Fargo, 194 N. Y., 359, 87 N. E., 518, 22 L. R. A. (N. S.), 696, quoting with approval from 1 Halsbury's Laws of England, sec. 799, it was said:

" 'Deer, though strictly speaking *ferea naturae,* if reclaimed and kept in enclosed ground, are the subject of property, pass to the executors and are liable to be taken in distress'.

"Animals *ferea naturae* are also, while they are reclaimed, the subject of larceny. State v. Shaw, 67 Ohio St., 157, 65 N. E., 875, 60 L. R. A., 481."

Other cases are cited. Among them is that of New York ex rel Silz v. Hesterberg, 211 U. S., 31, 53 U. S. (L. ed.), 75, a case to which the state, in the present instance, cites with reliance. Silz was a dealer in game for food and in his possession for sale were found two game birds which the evidence showed had been imported from a foreign country. According to the statutory. laws of New York, it was unlawful for Silz to have in his possession birds of the kind mentioned. He was convicted and appealed. The conviction was sustained by the Supreme Court of the United States. An analysis of that decision is made in the case of Graves v. Dunlap, supra.

As a general rule, there is no individual property in wild animals or fish so long as they remain wild, unconfined and in a state of nature, but wild animals become property when removed from their natural liberty and made subjects of man's dominion. Each of these propositions are sustained by many authorities. See Amer. & Eng. Cas., 1917B, p. 954.

In State v. Roberts, 59 N. H., 256, 47 Am. Rep., 199, the Supreme Court of New Hampshire held that the power of the Legislature to regulate and limit the manner of taking fish did not include the authority to interfere with the privilege of owners of private ponds having no communication through which fish were accustomed to pass to other waters.

In Corpus Juris, vol. 26, p. 624, citing many authorities and precedents, the following is stated: "But the legislature cannot interfere with

the fishing privileges of the owners of private ponds having no communication through which fish are accustomed to pass to other waters."

Apparently the game laws of this state are so framed as to recognize the limitation just mentioned. Article 951, P. C., 1925, reads thus: "It shall be unlawful for any person to catch any fish in the fresh waters of this State, with any seine or net other than minnow seine, not exceeding twenty feet in length, or to drag any seine, except such specified minnow seine, or to set any net, in the fresh waters of this State during the months of March and April, or to fish with any artificial bait of any kind in the fresh waters of this State during the months of March and April. Any person violating any of the provisions of this Article shall be deemed guilty of a misdemeanor and shall be upon conviction fined a sum of not less than twenty ($20.00) dollars nor more than one hundred ($100.00) dollars. *This article shall not apply to any artificial lake, pond, or pool, owned by any person, firm, corporation, city or town, that does not have as its source of water supply a river or creek or is not subject to overflow from a river or creek.*"

Articles 931 and 933, upon which the prosecution is founded, and article 951, just quoted, are all parts of the Game Law and must be construed together. When so construed, the exception in article 951, italicized above, apparently would operate to protect the appellant against a conviction in the present instance. Article 951 apparently legalizes the catching of fish of all kinds in private waters. The appellant having legally caught the fish described in the evidence in private waters in which the state had no interest, could not be guilty of an offense by having the fish in his possession.

From what has been said it follows that in the opinion of this court, the conviction of the appellant cannot be sustained.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*

### ON MOTION FOR REHEARING.

HAWKINS, JUDGE.—In our original opinion we said "wild animals become property when removed from their natural liberty and made subjects of man's dominion". In the state's motion for rehearing it is suggested that the language was too broad, and that the proposition stated was only true when such animals were "legally" removed, etc. Our original opinion should be qualified with the limitation suggested if there is danger of it being misunderstood.

In addition to article 951, P. C., 1925, referred to in our original opinion as indicating that it has not been the purpose of the Legislature to attempt interference with the owners' privilege to take fish from privately owned ponds, we advert to articles 924 and 925, P. C. (1925). The first of said articles makes it an offense to catch or take fish in any

of the "salt or *fresh waters, lakes or streams* in the state" by poison or any explosive, or by the use of drugs. The very next article (925) says a party who takes fish by poison or by the use of any explosive, etc. in any *"lake, pool or pond," without the consent of the owner* of such lake, pool or pond, shall be guilty of an offense. The article concludes with three words: "In prosecutions hereunder the burden to prove such consent shall be upon the defendant."

It seems to the writer that in no clearer language than that found in articles 925 and 951 could it be expressed that it was not the Legislative intent to place restriction on the owners' control over fishing in privately owned ponds, as distinguished from fresh water streams and lakes as defined in article 926 of the Penal Code.

Believing the proper disposition was made of the case originally, the state's motion for rehearing is overruled.

*Overruled.*