## ROY RUNNELS V. STATE.

No. 23969. May 5, 1948.
State's Motion for Rehearing Overruled (Without Written Opinion)
October 6, 1948.

Hon. Howard P. Green, Judge Presiding.

W. H. Hamblen, of Edna, and J. W. Ragsdale, of Victoria, for appellant.

Frank W. Martin, District Attorney, of Goliad, and Ernest S. Goens, State's Attorney, of Austin, for the State.

BEAUCHAMP, Judge.

The appeal is from a conviction for hog theft with punishment of two years in the penitentiary.

The facts of the case are brief. Appellant, together with two other parties who lived out of the county, named Matthews and Leatherwood, on the afternoon of November 10, 1946, had been at the home of a negro where they were engaged, with others, in gambling. These three left about 5 o'clock in the afternoon. Along the road they saw some hogs. While the evidence is not perfectly clear, it seems that they were in the roadway but ran through a fence into a pasture. Runnels told the two out of county men that they were wild hogs, and suggested they shoot them. He said the woods were full of them. They killed some of the hogs and as they did so they saw another car coming down the road. The two out of county men drove away, leaving appellant at the place alone. When the car approached it was occupied by three men who had been engaged in the gambling. They invited appellant to ride with them but he declined, saying that the car in which he was riding had run out of gas, that it was gone for a supply and would be back. He had blood on his clothing and explained that he had cut his finger. These parties returned the next day, investigated the place, and went to the owner, William Utz, and informed him of what they had seen. The arrest followed.

The facts are sufficient to support the conviction and need not be discussed other than as demanded by a consideration of the question raised by his motion for change of venue.

The appellant timely filed his application for change of venue from Jackson County, alleging as ground therefor that there existed in Jackson County so great a prejudice against him that he could not get a fair and impartial trial. His motion was controverted by the State and both sides introduced witnesses in support of such contentions. Appellant produced thirteen witnesses who lived in various sections of the county. It is clearly indicated that most of them, if not all, are people of integrity who were in position to know the matters about which they testified. It was the opinion of all of them that the case had been much discussed; that there existed a great prejudice against appellant because of previous activities; and most of them concluded that in their judgment he could not get a fair and impartial trial in Jackson County.

The State introduced several witnesses of like character and

standing in the county who had somewhat a different view. Most of them said they had heard but little talk about the case and it was their conclusion that he could get a fair and impartial trial in Jackson County. On cross-examination, however, it appears that they did not base this opinion on any favorable talk about him, but upon their confidence in the integrity of the men of Jackson County who would serve as jurors, and the belief of the witnesses that such jurors could and would, regardless of what they had heard about the defendant, try him according to the law as given in a charge by the court and based on the evidence which would be proven in the trial of the case.

Where the State has contested a motion for change of venue, and the court has heard the facts both for and against the motion, the conclusion of the trial court on the questions of fact will be binding on this Court unless there appears a clear abuse of discretion upon the part of the trial court. Considering the foregoing, it becomes our duty to determine whether or not the court had conflicting evidence sufficient to support his refusal to transfer the case. The appellant's evidence appears to be overwhelming. It comes from various places in the county and from men admittedly in position to give it. With one or two exceptions, they appear to have no interest in the appellant. Their opinion is entitled to respect, but the weight of that opinion must be based upon facts to support it. The mere opinion of others to the contrary cannot prevail unless they too base their conclusions on conditions which justify the same. The question we must here decide is whether or not they have given evidence in conflict with that produced by appellant to show the prejudice against him. The concluding opinions of the witnesses on the two sides are of much less importance than the evidence which they give about the expressions of sentiment. There is little material difference in the evidence as to existing prejudice against appellant. One group says it exists—they have heard much talk about it. The other group has heard but little talk and cannot say it does not exist. It is simply that they had not heard so much. If this should support the State's contest a change of venue could never be had, for there are always many people who never hear very much talk about such matters even though it exists all over the county.

A careful analysis of the evidence reveals that some of the State's witnesses admitted that the list of witnesses for defendant were good men and their testimony and opinions should demand respect. Because the State's witnesses had not heard

much themselves they thought a fair trial could be had. These witnesses did not deny that there had been talk, some admitted it. They merely said that they had not heard much. They did conflict with appellant's witnesses in their opinions but it was based principally on their confidence in the integrity of the jurors of Jackson County. Such confidence compliments both the witnesses and the citizenship. That is as it should be, but it is likely they did not have the proper conception of the law. When a juror has been informed about a case and has made up his mind as to the guilt or innocence of the party, he might be able to decide the case according to the law given in a charge by the court and the evidence he hears from the witness box, but our law does not place the burden nor require one accused of crime to take such risk. He is presumed to be innocent until his guilt is proven. That presumption should exist in the minds of the jury when the case begins and continue until all the evidence is in. He is still presumed to be innocent, in law, until the jury has returned its verdict of guilt. The right to have that kind of jury to try a man does not depend on his innocence or his guilt in the case. What develops in the witness box cannot cure the situation. If it did, the facts of this case might be a good argument in favor of the State's position. The evidence against him appears to be conclusive. His defensive plea is weak. Nevertheless, he was entitled to a jury in which no man was prejudiced, no man had made up his mind as to his guilt or innocence. The procedure is the same for the guilty as it is for the innocent. We think that the evidence introduced overwhelmingly supports the motion for change of venue and that it should have been granted. Stovall v. State, 260 S. W. 177; Dobbs v. State, 103 S. W. 918; and Bond v. State, 50 S. W. (2d) 813.

In paragraph 16 of the court's charge he submitted the law of principals and also appellant's defense in which he said, in part, "* * * but if you further find from the evidence, or if you have a reasonable doubt thereof, at the said time defendant believed said hogs were wild and were not the corporeal personal property of an owner you will acquit the defendant of the offense of hog theft." Being dissatisfied with this, the defendant presented Special Requested Charge No. 1, in which he defined what is meant by wild hog in the following language. "In this connection you are instructed that a wild hog is a hog that has left the possession of the owner thereof and has lost its identity so that its ownership cannot be established by the owner thereof." Without agreeing that this is a correct charge, it is observed that appellant requested it, the court gave it, and he has no complaint against it. He presents the contention, however, that

the foregoing quotation from the court's main charge is in conflict with that requested, and given. We do not think so. The court made no attempt, in the general charge, to define what would constitute a wild hog. He simply used the term without defining it and properly added, "* * *and were not the corporeal personal property of an owner * * *." Wild animals are not subject to theft until they become the property of an owner. This they do immediately upon being reduced to possession. Jones v. State, 45 S. W. (2d) 612. This seems to be the settled law in all jurisdictions. Mr. X. captures a wildcat. It is a wildcat still, but it immediately becomes his property. The fisherman becomes the owner of his catch as soon as he secures possession. It is wild game still, but is the subject of theft. The court's limitation was correct.

Having concluded that the court was in error in refusing to grant appellant's motion for change of venue, the judgment of the trial court is now reversed and the cause is remanded.