

# THE ATTORNEY GENERAL
# OF TEXAS

### AUSTIN 11, TEXAS

**WILL WILSON**
**ATTORNEY GENERAL**

July 24, 1959

Honorable H. D. Dodgen
Executive Secretary
Game & Fish Commission
Walton State Building
Austin, Texas

Opinion No. WW-672

Re: Questions relating to H.B. No.
12, Acts of 56th Leg., Reg.
Session, 1959, known as the
"Texas Shrimp Conservation Act".

Dear Mr. Dodgen:

This opinion is issued in response to correspondence from you re-
questing an opinion of this office answering the eight questions which follow
relating to H. B. No. 12, Acts of 56th Leg., Reg. Session, 1959, known as the
"Texas Shrimp Conservation Act".

Questions which were numbered 1. and 2. in your request have been
redesignated by reversing their order to facilitate the discussion of the
material involved. References in this opinion will be to the questions as
they have been numerically designated in the opinion.

H. B. No. 12, Acts of 56th Leg., Reg. Session, 1959, known as the
"Texas Shrimp Conservation Act", has been published in part No. 4 of Vernon's
Texas Session Law Service, 56th Leg., Reg. Session, Laws 1959, and has been
designated as Chapter 187, appearing on pages 407-418. It further has been
designated for Vernon's Annotated Civil Statutes as Article 4075b and, for
the purpose of brevity, will be referred to as Article 4075b through the re-
mainder of this opinion.

Question No. 1: "Must a bay-bait shrimp boat operator hold a bait
dealers license before being entitled to sell bait shrimp to a bait dealer?"

A "Commercial Bay-Bait Shrimp Boat" is defined in Sub-section 3(f)
of Article 4075b as a particular boat or vessel "used for the purpose of
taking or catching, or assisting in taking or catching, shrimp from the in-
side waters of the State of Texas for pay, or for the purpose of sale, bar-
ter or exchange".

Section 5 of the Article requires the owner of a Commercial Bay-
Bait Shrimp Boat to procure a Commercial Bay-Bait Shrimp Boat License before
using the boat for the purpose stated in Sub-section 3(f). This license
costs thirty dollars ($30.00) and is to be issued by the Game and Fish Com-
mission only during the months of January and February and is to expire March
1st of the year following the date of issuance.

Sub-section 6(a) of the Article authorizes a Commercial Bay-Bait
Shrimp Boat operator to take up to two hundred and fifty (250) pounds of

heads-on shrimp per boat per calendar day and to "sell the same for bait in the manner provided by this Act . . .". And, Sub-section 6(a)(1) further states that such operator "may sell, during the open season hereof, any shrimp for bait legally caught within the inside waters".

A "Bait-Shrimp Dealer" is defined in Sub-section 3(h) of the Article as a particular person "who operates a shrimp house, plant or other establishment in any coastal county of the State for pay for the purpose of handling shrimp caught or taken for bait purposes from the coastal waters of this State for retail or wholesale purposes, either fresh or frozen".

Sub-section 10(a) of the Article requires a person to procure from the Game and Fish Commission a Bait Shrimp Dealer's License in order "to engage in the business of a Bait-Shrimp Dealer . . .". The fee for the license is fifty dollars ($50.00), and the license expires August 31st following the date of issuance.

Sub-section 10(b) states that a Bait Shrimp Dealer's License "shall include the right to sell, purchase and handle minnows, fish and other forms of aquatic life for the purpose of sale or resale for fish bait purposes, within the coastal counties of this State". By these provisions Article 4075b encompasses the activities authorized for a holder of a Bait Dealers' License under Chapter 29, Acts of 43rd Leg., 1st Called Session, 1933, as amended, which is listed as Article 934a of Vernon's Annotated Penal Code.

Despite the statement in Sub-section 6(a) of Article 4075b that a Commercial Bay-Bait Shrimp Boat operator can lawfully sell the shrimp he takes "in the manner provided by this Act", other provisions of the Article do not clearly provide the manner of such sale. Sub-section 3(h) of the Article does not use terms which seem appropriate to describe a boat operator selling to a bait dealer the bait shrimp he has caught with the use of the boat.

Also, Sub-section 13(h) of the Article in prescribing penalties for certain unauthorized acts makes no mention of a boat operator having a Bait Shrimp Dealer's License himself when selling to a Bait-Shrimp Dealer and, indeed, suggests otherwise by its wording which describes only one type of transaction, ". . . any Bait Shrimp Dealer who knowingly unloads, buys or handles in any way from an . . . unlicensed Commercial Bay-Bait Shrimp Boat any shrimp . . . shall be deemed guilty of a misdemeanor . . .".

Attorney General's Opinion WW-584 considered Section 1 of Article VIII of the Constitution of Texas, which provides that persons engaged in agricultural pursuits shall not be required to pay an occupation tax, and its application to a proposed tax to be levied on peanuts at the time of their sale by the producer. The opinion concluded that a producer of peanuts is engaged in agricultural pursuits when he harvests the fruits of his labors from the sale of his crop since such a sale was a vital and necessary element of and incident to the occupation of farming.

Although no constitutional provision is concerned, similar reasoning leads to the conclusion that the selling of bait shrimp to a bait dealer by

a bay-bait shrimp boat operator is a vital and necessary element of and incident to the occupation of commercial bay-bait shrimping.  Based on the wording of these pertinent provisions and this conclusion, the answer to Question No. 1 is that a bay-bait shrimp boat operator does not need to hold a bait dealer's license to sell bait shrimp to a bait dealer.

Question No. 2:  "Is a bay-bait shrimp boat operator required to hold a bait dealers license if he sells bait shrimp, caught with the use of said boat, from the boat to fishermen in retail trade?"

A different situation than that just discussed exists when a bay-bait shrimp boat operator sells bait shrimp, caught with the use of his boat, from the boat to fishermen in retail trade.

Considering the various existing means of disposing of the take of shrimp of the bay-bait shrimp boat operator, such operator's position in the shrimp industry undergoes a subtile, yet distinct, change when he ceases selling his take of shrimp to a bait dealer, who would sell the bait shrimp to fishermen in the retail trade and, instead, makes the retail sale himself.

This altered nature of the operation appears to be embraced by the definition of a "Bait-Shrimp Dealer" provided by Sub-section 3(h) of Article 4075b.  A boat capable of movement, as well as a permanently located structure, could be within the term "other establishment" used in Sub-section 3(h), since an earlier commercial fishing regulatory act, listed as Article 934a of Vernon's Annotated Penal Code, included as a "place of business" a vehicle from which aquatic products were sold.

Sub-section 10(a) of the Article requires "a Bait Shrimp Dealer's License for each bait stand or place of business maintained by such person".  In Attorney General's Opinion O-3794, one of the announced conclusions was that "a 'place of business' is a place where any portion of the business of a dealer is conducted".  Similar reasoning indicates that when bait shrimp are sold from a boat to fishermen in retail trade, the boat becomes a bait dealer's place of business requiring a license as such.

Further substantiating this conclusion is the variance in the respective license fees required of the Bait Shrimp Dealer, $50.00, and the Commercial Bay-Bait Shrimp Boat operator, $30.00.  There does not appear to be any reasonable basis for thinking that the Legislature would authorize such a boat operator to compete for the same retail trade with a bait dealer who has had to pay a two-thirds greater fee to engage in the business.

However, it should further be noted that Sub-section 10(a) only requires a Bait Shrimp Dealer's License if a person is "to engage in the business".  Attorney General's Opinion O-4414, which concerned the need for a wholesale fish dealer's license, discussed engaging in a business as follows:

"The term 'engaged in the business' does not mean the performance of a single or isolated business trans-

action, but strongly suggests and carries the idea of
conducting, prosecuting and continuing business by per-
forming progressively .... acts within the statutory
definition.  ... the single transaction of a shipment
or sale .... would be insufficient ...". (Cases cited.)

Based upon these factors, the answer to Question No. 2 is that a
bay-bait shrimp boat operator is required to hold a bait dealers license if
he engages in the business of selling bait shrimp, caught with the use of
his boat, from such boat to fishermen in retail trade.

Question No. 3:  "May a bait dealer dehead and hold in a fresh or
frozen state, for sale as fish bait, shrimp that were taken for bait purposes
and which are qualified by size for bait purposes only?"

Sub-section 6(c)(4) of the Article states that the quantity of
bait shrimp possessed by any bona fide licensed Bait Shrimp Dealer for use
as bait only "shall not exceed the amount that may be legally possessed as
herein provided".  Sub-section 7(b) includes a provision that "It shall be
unlawful for any person, at any time, to possess . . . shrimp caught in any
of the outside waters of this State during such closed season for said out-
side waters".

Sub-section 8(a) of the Article states as follows:

"Salt water shrimp in their fresh state, legally
taken in either the inside waters or in the outside
waters of this State during the open season thereof,
may be had in possession for a period of five (5) days
after the end of such open season, but not thereafter
except by a bona fide licensed bait dealer or sports
fishermen as otherwise provided herein".  (Emphasis
added.)

Section 11 of the Article, which provides for the taking by a per-
son of bait shrimp for his personal use and for a Sports Bait-Shrimp Trawl
License, states that ". . . it shall be unlawful for any person taking or
catching, or attempting to take or catch, shrimp for his own use, under the
provisions of this Act, to have within his possession more than two (2) quarts
of shrimp per person, either fresh shrimp with heads on, or frozen shrimp, or
both, to be used for bait purposes only, but not otherwise".

Other provisions regulate only taking or catching, not possessing
shrimp, or the size of shrimp possessed, not the quantity.  Thus, despite
the reference in Sub-section 6(c)(4) to "possessed as herein provided", there
is no limitation provided on the quantity of bait shrimp which can be held in
the possession of a licensed bait dealer.

Nor is any distinction drawn in the provisions of the Article be-
tween fresh or frozen shrimp, either with heads on or headed, which would ef-

fect the possession of such shrimp by a licensed bait dealer. The only distinction made between fresh and frozen shrimp, in Sub-section 8(a), is not applicable to licensed bait dealers, who are specifically excepted from its provisions.

The situation described by Question No. 3 states that the shrimp involved were taken for bait purposes and are qualified by size for bait purposes only, and there are no additional provisions in the Article which appear to regulate manner of possession or subject matter of such possession.

Therefore, as these are the only pertinent provisions, the answer to Question No. 3 is that a bait dealer may head and hold in a fresh or frozen state, for sale as fish bait, shrimp that were taken for bait purposes and which are qualified by size for bait purposes only.

Question No. 4: "In the event that an amount of bait shrimp in excess of the daily limit of 250 pounds is taken, may the State seize and hold and dispose of the shrimp in excess of the daily catch limit?"

Section 1 of Article 4075b states that it is ". . . the public policy of this State that the shrimp resources of the State of Texas be conserved and protected from depletion and waste in order that the people of Texas and their posterity may enjoy the most reasonable and equitable privileges in the ownership and taking of such shrimp resources . . ." (Emphasis added).

Article 7 of Section 1 of Chapter 178, Acts of 39th Leg., 1925, designated as Article 4026, Vernon's Annotated Civil Statutes, states in part as follows:

> "All of the . . . bays and inlets in this State, and all that part of the Gulf of Mexico within the jurisdiction of this State, together with their beds and bottoms, and all of the products thereof, shall continue and remain the property of the State of Texas . . .".

Article 4026 also provides for the Game and Fish Commission to have jurisdiction over and control of the taking and conservation of shrimp in accordance with and by the authority vested in it by the laws of the State.

In Sterrett v. Gibson, Civ. App., 168 S.W. 16, the Court, in considering statutory provisions now included in Article 4026 and quoted above, stated in part as follows:

> "This is merely a declaration of the sovereignty that abides in every state so far as the fish and game within its borders are concerned . . . The citizen has no vested right in game and fish, but the state owns the game and the tide waters and the fish therein, as well as the beds of all tide waters". (Cases cited.)

In Greer v. Connecticut, 161 U.S. 519, 16 S. Ct. 600, 40 L. Ed. 793, the United States Supreme Court upheld a state law which prohibited the out-of-state transportation of game killed within the state, despite assertions that the law was contrary to provisions of the commerce clause of the Federal Constitution. The decision states that there is a "fundamental distinction between the qualified ownership in game and the perfect nature of ownership in other property" and the state has the consequent power "to follow such property into whatever hands it might pass, with the conditions and restrictions deemed necessary for the public interest".

Greer v. Connecticut also quotes with approval from State v. Rodman, 58 Minn. 393, 59 N.W. 1098, in part as follows:

". . . [the State] may adopt any reasonable regulations, not only as to time and manner in which such game may be taken and killed, but also imposing limitations upon the right of property in such game after it has been reduced to possession, because he who takes or kills game had no previous right to property in it, and, when he acquires such right by reducing it to possession, he does so subject to such conditions and limitations as the legislature has seen fit to impose".

The Greer v. Connecticut decision followed the reasoning of the United States Supreme Court in McCreary v. Virginia, 94 U.S. 391, 24 L. Ed. 248, and subsequent limiting of state ownership and regulation of fish and game has occurred only when conflicts arose with provisions of the Federal Constitution, as in Missouri v. Holland, 252 U.S. 416, 40 S. Ct. 382, 64 L. Ed. 641 (Constitution, laws and treaties of the United States shall be the supreme law of the land); Foster-Fountain Packing Co. v. Haydel, 278 U.S. 1, 49 S. Ct. 1, 73 L. Ed. 147 (commerce clause); Torao Takahashi v. Fish and Game Commission, 334 U.S. 410, 68 S. Ct. 1138, 92 L. Ed. 1478, (equal protection of the laws); and Toomer v. Witsell, 334 U.S. 385, 68 S. Ct. 1156, 92 L. Ed. 1460 (privileges and immunities clause and commerce clause).

The Texas Court of Criminal Appeals in Jones v. State, 119 Cr. R. 126, 45 S.W.2d 612, states that the general rule that "wild animals become property when removed from their natural liberty and made subjects of man's dominion" is "only true when such animals are 'legally' removed".

This being true, since the State of Texas has declared the ownership of shrimp as being in the State in Article 4026, the ownership of shrimp would not pass to a person who has illegally taken such shrimp in violation of provisions of statutes regulating such taking, but would remain with the State.

Sub-section 6(a) of Article 4075b provides that "it shall be lawful for any Commercial Bay-Bait Shrimp Boat operator to take . . . not to exceed more than a total of two hundred and fifty pounds (250) of heads-on shrimp of any size or species per boat per calendar day . . .".

Sub-section 6(c)(2) states as follows:

"It shall be unlawful for any bona fide licensed Commercial Bay-Bait Shrimp Boat operator to take or catch within the coastal waters of this State, at any time more than two hundred fifty (250) pounds of fresh heads-on bait shrimp per boat per calendar day".

Other provisions of Article 4075b further regulate the taking of shrimp, including the designating of closed seasons, and Section 13 of the Article states that "Any person who shall violate any provision of this Act shall be deemed guilty of a misdemeanor . . ." and specifies particular acts which are illegal and particular penalties for acts which violate provisions of the Article.

Therefore, ownership in bait shrimp taken in excess of the daily limit of 250 pounds and in shrimp taken during the closed season would remain with the State, as it would with any shrimp illegally taken. No conflicts with the provisions of the Federal Constitution appear to exist which would alter this situation.

That portion of Question No. 4 concerning the State's disposing of seized shrimp will be considered together with Question No. 5, which relates to the same subject. The remainder of Question No. 4 concerning the State's seizing and holding shrimp will be considered first.

Shrimp taken illegally in violation of the provisions of Article 4075b are brought within Title 6 of Vernon's Annotated Code of Criminal Procedure, Articles 304 through 332a, which relates to searches, seizures and disposition of certain property, by its Article 307, which provides as follows:

"The word 'stolen', as used in this title, is intended to embrace the acquisition of property by any means made penal by the law of the State".

In a similar situation, Attorney General's Opinion O-7047 held that Article 307 brought deer illegally acquired within these same articles in Title 6. This being true, shrimp illegally taken are subject to seizure by the usual methods available for seizing stolen property, such as by search warrant and following an arrest.

Illegally taken shrimp which have been seized can, of course, be held as evidence to be used in any pending case. And, since the ownership of such illegally taken shrimp remains with the State, the right to hold the shrimp would not be dependent on the pendency of a case but would exist independent of such.

Therefore, a partial answer to Question No. 4 is that the State may seize and hold bait shrimp taken in excess of the daily catch limit of 250 pounds.

Question No. 5: "What disposition should be made of shrimp taken during the closed season, or otherwise illegally taken?"

Article 326 of the Code of Criminal Procedure concerns the disposition of property taken under provisions of Title 6 of the Code and refers to the rules prescribed by the Code for such disposition. Chapter 2 of Title 12 of Vernon's Annotated Code of Criminal Procedure, Articles 933 through 943, provides for the disposition of stolen property.

That illegally taken shrimp would be within the provisions of this chapter is evidenced by two of the articles in particular. Article 934 is as follows:

"Upon the trial of any criminal action for theft, or for any other illegal acquisition of property which is by law a penal offense, the court trying the case shall order the property to be restored to the person appearing by the proof to be the owner of the same". (Emphasis added.)

Article 943 states as follows:

"Each provision of this chapter relating to stolen property applies as well to property acquired in any manner which makes the acquisition a penal offense".

Thus, the State as the owner of such illegally taken shrimp can secure the possession of seized shrimp by a court order as provided in Chapter 2 of Title 12. Such a court order could properly specify an agent of the Game and Fish Commission as the person to receive the shrimp for the State.

The Game and Fish Commission, on once having such seized shrimp in its possession, would be confronted with the problem of what disposition to make of the shrimp.

There is no provision made for disposal of seized shrimp in Article 4075b. Yet, assuming that most, if not all, seized shrimp will be in a condition which precludes their being returned into their habitat, a disposition which avoids the waste which would result from merely permitting the shrimp to spoil seems necessary.

Two types of disposition of similar property of the State are found in other statutes. Just as shrimp are the property of the State, Article 871a of the Penal Code provides, as follows, that:

"All wild animals, wild birds, and wild fowl within the borders of this State are hereby declared to be the property of the people of this State",

and Article 923m of the Penal Code provides, as follows, that:

"All the fur-bearing animals of this State are hereby declared to be the property of the people of this State".

Articles 897 and 923q of the Penal Code provide for the disposition of property of the State which is among that enumerated in these latter two articles, when such property has been illegally taken and subsequently recovered by the State.

Article 897 provides in part as follows:

"All wild birds, wild fowl, or wild game animals, or parts thereof, which have been killed, taken in any way, shipped, held in storage, or found in a public eating place, contrary to the provisions of this chapter, be disposed of by order of the Game, Fish and Oyster Commissioner, or one of his deputies by donating same to charitable institutions, hospitals, or needy widows and orphans".

Section 11 of Article 923q, concerning the pelts of fur-bearing animals, provides in part as follows:

". . . if the defendant is found guilty of taking or possessing such pelt or pelts, in violation of any provision of this Act, the pelt or pelts so seized as evidence shall be delivered to the office of the Game, Fish and Oyster Commission by the Game and Fish Warden, and the Game, Fish and Oyster Commission is hereby directed to sell such pelt or pelts".

While there is no specific statutory provision for disposing of seized shrimp, it may be noted that Sub-section 12(b) of Article 4075b is quite similar to Section 13 of Article 923q in its provisions for the disposition of moneys collected from penalties for violation of the article.

Section 13 of Article 923q states as follows:

"All monies collected from taxes, licenses, fines, sale of confiscated pelts and penalties for violation of this Act shall be deposited with the Treasurer of this State during the first week of each month and shall be credited to the Special Game Fund and used for the purposes provided for by law". (Emphasis added.)

Sub-section 12(b) of Article 4075b likewise states in part as follows:

". . . all moneys received from penalties assessed for violation of this Act, after deduction of fees as-

allowed by law, shall be remitted to the Game and Fish
Commission at Austin not later than the 10th day of the
month following the date of collection, and shall be
deposited by said Commission in the State Treasury to
the credit of the Special Game and Fish Fund".

A settled rule of statutory interpretation is that statutes which
deal with the same general subject have the same general purpose or relate
to the same person or thing or class of persons or things, are considered as
in pari materia (in relation to the same matter), although they contain no
reference to one another and were passed at different times or at different
sessions of the Legislature.  39 Texas Jurisprudence 253, Section 135 (author-
ities cited).

Besides recognizing this rule that consideration should be given
to the relationship of various statutes to each other, despite the absence
of legislative instructions to consider such relationship, Texas Courts on
occasion have gone even further and refused to follow the literal meaning
of a provision.  In refusing to follow the literal meaning of an election
law provision and specifying a different meaning which the Court decided was
more in harmony with the intent of the statute as a whole, the Supreme Court
of Texas in Wood v. State, 126 S.W.2d 4, stated in part as follows:

"It is the settled law that statutes should be con-
strued so as to carry out the Legislative intent, and
when such intent is once ascertained, it should be given
effect, even though the literal meaning of the words
used therein is not followed".

Also, it is an accepted principle of law that where the Legislature
has given an agency certain responsibilities, the agency by implication may
exercise those incidental powers which are necessary to fulfill such responsi-
bilities.  See 39 Texas Jurisprudence 186, Section 99 (authorities cited).

Since the only alternative in the absence of additional legislation
is to permit the wasting by spoilage of shrimp which the Legislature in Sec-
tion 1 of Article 4075b has declared should be conserved and protected from
depletion and waste, the cited rules of statutory construction should be utili-
zed in resolving the problem of disposing of seized shrimp.

Article 4026 declares shrimp to be the property of the State of Texas
and provides for the Game and Fish Commission to have jurisdiction over and
control of the taking and conservation of shrimp in accordance with and by the
authority vested in it by the laws of the State.  Under Articles 4026 and 4075b
the Game and Fish Commission has the responsibility of handling property of the
State, that is, illegally taken shrimp which the Commission has recovered.
Also, certain types of disposition have been provided by the Legislature for
similar recovered property of the State, other than shrimp, in Articles 897
and 923q.

Since (1) these other related statutes can properly be considered in relation to Article 4075b under the in pari materia rule, (2) the Texas Supreme Court has recognized that statutes should be construed so as to carry out the Legislative intent, and (3) the Game and Fish Commission is responsible for handling in a manner which is beneficial to the State those illegally taken shrimp which it has recovered, the Commission should dispose of such shrimp in the manner which it considers most appropriate, and the choice of the manner of disposal would be a matter of internal administration of the Commission.

Therefore, the answer to the remaining portion of Question No. 4 and to Question No. 5 is that the Game and Fish Commission should dispose of recovered illegally taken shrimp in the manner which it considers most appropriate and the choice of the manner of disposal would be a matter of internal administration of the Commission.

Question No. 6:  "If a person holds a valid Shrimp Trawl License on the effective date of the act but does not hold a Commercial Fishing Boat License, may he purchase the Commercial Fishing Boat License and take shrimp until the Commercial Bay-Bait Shrimp Boat License may be issued?"

Section 5 of Article 4075b states in part as follows:

"It shall be unlawful for any Commercial Bay-Bait Shrimp Boat to be used for the purpose of taking or catching, or assisting in taking or catching, shrimp from the inside waters of Texas, without the owner thereof having first procured a license, to be known as a Commercial Bay-Bait Shrimp Boat License, from the Commission privileging such boat to be so used within the inside waters of Texas.  The fee for a Commercial Bay-Bait Shrimp Boat License shall be Thirty Dollars ($30) and such License shall be issued for a period of one (1) year and shall expire March 1st of the year following the date of issuance, and shall be secured from and issued by the Commission only during the months of January and February of each year; . . .".

Sub-section 6(a) of the Article designates the period from August 15th through December 15th as the "open season" for the taking or catching of shrimp in the inside waters for Commercial Bay-Bait Shrimp Boat operators.

Sub-section 12(a) of the Article states as follows:

"Any valid license pertaining to the inside waters expiring after the effective date of this Act and prior to the licensing dates privided for within this Act are hereby expressly declared to be and remain valid licenses until the first day of March, A.D. 1960".

Sub-section 13(f) of the Article states as follows:

"It shall be unlawful for any person to operate
in any manner upon any of the coastal waters of this
State without having first secured the proper and
appropriate license required by this Act and any per-
son failing or refusing to secure such license shall
be guilty of a misdemeanor and upon conviction shall
be punished as for a violation of any other provision
of this Act".

The Legislature expressed in Section 16 of Article 4075b an intent
to have the Article effective from the date of its passage and, since its
passage was by the majorities required to effectuate this intent, the Article
became effective May 20, 1959, when approved by the Governor.

The licenses extended by the quoted Sub-section 12(a) of Article
4075b are those provided for in Article 934a of the Penal Code. Section 8 of
Article 934a states in part as follows:

"All license fees provided for in this Act, are
annual fees and all licenses shall be effective on and
after September 1st of each year and shall be valid
until August 31st of the year following".

Since all licenses under Article 934a would expire on August 31,
even those purchased only a few days prior to the expiration date, a correla-
tion of Sub-section 12(a) of Article 4075b and Section 8 of Article 934a es-
tablishes that any license provided for in Article 934a which is issued on or
before August 31, 1959, for the period expiring at the end of August 31, 1959
would be extended by Sub-section 12(a) to March 1, 1960. No specific repeal
of the licensing provisions of Article 934a was attempted by Article 4075b,
except insofar as Sub-section 15(a) eliminated shrimp trawl licenses.

Given literal meanings, Sub-sections 12(a) and 15(a) might authorize
only those possessing shrimp trawl licenses as of May 20, 1959, and a Commer-
cial Fishing Boat License as of August 31, 1959, to engage in commercial
shrimp fishing.

Yet the United States Supreme Court in Truax v. Raich, 239 U.S.33,
36 S. Ct. 7, 60 L. Ed. 131, stated in part as follows: ". . the right to
work for a living in the common occupations of the community is of the very
essence of the personal freedom and opportunity that it was the purpose of
the [14th] Amendment to secure", and proceeded to strike down an Arizona law
which restricted types of persons employed as repugnant to the Federal Con-
stitutional provision for equal protection of the laws.

The United States Supreme Court in Torao Takahashi v. Fish and Game
Commission, 334 U.S. 410, 68 S. Ct. 1138, 92 L. Ed. 1478, again stated this
rule in finding unconstitutional a California law which excluded aliens, who

were lawful residents of that state, from making a living by fishing in the ocean off its shores, while permitting all others to do so.

In view of these Federal rulings, a reasonable construction of Article 4075b, and yet one which avoids possible constitutional repugnancy, should be sought.  Certainly a construction which denies "the right to work for a living in the common occupations of the community" should be avoided.

Section 90, 39 Texas Jurisprudence 168, states in part as follows:

". . . the court should first endeavor to ascertain the legislative intent, from a general view of the whole enact- ment.  Such intent having been ascertained, the court will then seek to construe the statute so as to give effect to the purpose of the Legislature, as to the whole and each material part of the law, even though this may involve a de- parture from the strict letter of the law as written by the Legislature".  (Authorities cited).

Sections 95 through 98 of Texas Jurisprudence further consider de- parture from literal meaning in statutory construction and Section 95 at page 182 states in part as follows:

". . . words or clauses should not be given their literal meaning when such an interpretation . . . would lead to palpable absurdity . . . [or] injustice . . . if such construction can be reasonably avoided". (Authorities cited.)

The previously quoted Wood case is an example of the Texas Supreme Court's application of these rules to a particular statute.

In view of the need for an interpretation of Article 4075b which would not be repugnant to the Federal Constitution and one which, also, would not lead to injustice or absurdity, consideration should be given to the legislative intent in enacting this Article.

The legislative intent, as evidenced throughout the Article and as emphasized in Section 1, is only to conserve and protect the shrimp resources of the State from depletion and waste and to achieve "fair, impartial, and uniform law enforcement".

Such being the legislative intent, there is no reason revealed why the Legislature would have intended to preclude from entering commercial shrimp fishing for most of a year those persons who did not possess shrimp trawl licenses as of May 20, 1959, and a Commercial Fishing Boat License as of August 31, 1959.

Sub-section 15(a) of Article 4075b, which purported to repeal Sub- sections 3(5)(a) and 3(5)(b) of Article 934a providing for shrimp trawl li-

censes, must therefore be considered inoperative before March 1, 1960, as repugnant to the equal protection of the laws provision of the 14th Amendment of the Federal Constitution.  To further avoid possible repugnancy to the Federal Constitution and any absurd or unjust result, Sub-section 12(a) of Article 4075b should be interpreted as extending to March 1, 1960, all the licenses provided for in Article 934a, which are involved, including licenses which the Commission shall issue after September 1, 1959, until the licenses provided for in Article 4075b become available and effective.

Therefore, the answer to Question No. 6 is that a person who holds a valid Shrimp Trawl License on the effective date of the Act, but who does not hold a Commercial Fishing Boat License, may purchase a Commercial Fishing Boat License and take shrimp until the Commercial Bay-Bait Shrimp Boat License may be issued.

Question No. 7:  "May a wholesale fish dealer purchase, dehead, and sell bait shrimp for bait purposes under his Wholesale Fish Dealer License?"

Sub-section 1(b) of Article 934a of the Penal Code defines a "Wholesale Fish Dealer" as follows:

"A 'Wholesale Fish Dealer' is any person engaged in the business of buying for the purpose of selling, canning, preserving or processing, or buying for the purpose of handling for shipments or sale, fish or oysters or shrimp or other commercial edible aquatic products, to Retail Fish Dealers, and/or to Hotels, Restaurants or Cafes and to the Consumer".

Sub-section 1(d) of the same Article, which has been replaced in certain situations by provisions of Article 4075b, defined a "Bait Dealer" as follows:

"A 'Bait Dealer' is any person engaged in the business of selling either minnows, fish, shrimp or other aquatic products, for fish bait".

Section 2 of Article 934a further provided in part as follows:

"Before any person in this State shall engage in the business of a . . . 'Wholesale Fish Dealer', 'Retail Fish Dealer', 'Bait Dealer', . . . the proper license provided for in this Act privileging them so to do shall first be procured by such person from the Game, Fish and Oyster Commission of Texas or from one of its authorized agents".  (Emphasis added.)

Since Sub-section 1(b) by its very terms applies only to ". . . shrimp or other commercial edible aquatic products . . ." and the business

of selling aquatic products for fish bait is defined and licensed separately, handling bait shrimp for bait purposes would not be an activity permitted under the authority of a Wholesale Fish Dealer License.

Therefore, the answer to Question No. 7 is that a wholesale fish dealer may not purchase, dehead, and sell bait shrimp for bait purposes under his Wholesale Fish Dealer License.

Question No. 8: "If the answer to question No. 7 is negative, may a wholesale fish dealer purchase a Bait Shrimp Dealer License and buy, dehead, and sell shrimp as described in the above question?"

There is no provision in either Article 4075b or Article 934a which restricts one to a single licensed business. Such being the situation, several types of business could be engaged in providing each of the proper licenses had been secured.

Therefore, the answer to Question No. 8 is that a wholesale fish dealer may purchase a Bait Shrimp Dealer License and buy, dehead, and sell bait shrimp for bait purposes.


## SUMMARY

Question No. 1. A bay-bait shrimp boat operator does not need to hold a bait dealers license to sell bait shrimp to a bait dealer.

Question No. 2. A bay-bait shrimp boat operator is required to hold a bait dealers license if he engages in the business of selling bait shrimp, caught with the use of his boat, from such boat to fishermen in retail trade.

Question No. 3. A bait dealer may head and hold in a fresh or frozen state, for sale as fish bait, shrimp that were taken for bait purposes and which are qualified by size for bait purposes only.

Question No. 4. The State may seize and hold bait shrimp taken in excess of the daily catch limit of 250 pounds.

Question No. 5. The Game and Fish Commission should dispose of recovered illegally taken shrimp in the manner which it considers most appropriate and the choice of the manner of disposal would be a matter of internal administration of the Commission.

Question No. 6. A person who holds a valid Shrimp Trawl License on the effective date of the Act, but who does not hold a Commercial Fishing Boat

License, may purchase a Commercial Fishing Boat License and take shrimp until the Commercial Bay-Bait Shrimp Boat License may be issued.

Question No. 7. A wholesale fish dealer may not purchase, dehead, and sell bait shrimp for bait purposes under his Wholesale Fish Dealer License.

Question No. 8. A wholesale fish dealer may purchase a Bait Shrimp Dealer License and buy, dehead, and sell bait shrimp for bait purposes.

Yours very truly,

WILL WILSON
Attorney General of Texas

By: *Charles D. Cabaniss*
Charles D. Cabaniss
Assistant

CDC:aw

APPROVED:

OPINION COMMITTEE:

Geo. P. Blackburn, Chairman

Jack Goodman
W. O. Schultz, II
David R. Thomas
John Wildenthal, Jr.

REVIEWED FOR THE ATTORNEY GENERAL
BY:
    Morgan Nesbitt