## JUAN SANCHEZ V. STATE.

No. 24973. November 15, 1950.
Rehearing Denied January 10, 1951.

*Lev Hunt, William York,* and *E. G. Henrichson,* Edinburg, for appellant.

*George P. Blackburn,* State's Attorney, Austin, for the state.

WOODLEY, Judge.

Appellant was convicted of murder with malice and his punishment was assessed at 20 years in the penitentiary.

Appellant, a man about 25 years of age, is married, and is the father of four children.

Appellant is the son of the boss of a crew engaged in harvesting and packing vegetables and other crops, and in the absence of his father acted as boss of the crew of some twenty to fifty Mexican laborers. Most if not all of the crew were "wetbacks," that is, in the United States without passports.

Among the crew was one Sofia Serrato, a cousin of appellant's wife, whose home was in Mexico.

Appellant became interested in Sofia and sought to have sexual relations with her, but she declined. He asked her to be his sweetheart, and she told him she would not because he was a married man.

The deceased, Fidel Saiz Rodriguez, also a citizen of Mexico, was also a member of the crew employed by appellant's father.

Appellant became angry with the deceased because of his talking with Sofia.

On Saturday before the homicide on the following Wednesday, appellant talked to the deceased about the matter. Regarding this conversation appellant testified:

"On Sunday I told Fidel he would be a traitor to me if he took Sofia away from me."

The following day the deceased was deported to Mexico. Appellant denied any responsibility for or connection with such deportation. The deceased returned from Mexico the following day, and on Wednesday rejoined the crew.

Early Wednesday afternoon, the laborers were grouped in the field awaiting a new supply of baskets. Sofia was seated some 15 feet from the other laborers, and the deceased sat near her.

According to the witness, Sofia Serrato, the deceased was engaged in cutting a beet when appellant approached them and told the deceased to go to hell. Then, as the deceased was rising to his feet, appellant pulled a knife from under his shirt and stabbed the deceased in the heart, from the effect of which he died.

Appellant, as a witness in his own behalf, testified that the deceased came to his house on that Wednesday morning. He said that he told the deceased that there was no more work for him because he was afraid that the deceased would kill him from behind.

According to appellant's testimony the deceased got on the truck with the other hands, though he was told by appellant not to do so.

Appellant's version of the killing was that he approached the deceased as he sat with Sofia and told him to get up so that he could check the baskets. That the deceased refused to get off the baskets and began to curse appellant, and then attacked appellant with the knife which he had for cutting beets. That the deceased twice struck at him with the knife, and then appellant, for the first time, remembered that he had a knife which he carried to replace one that a laborer might lose or break, and he stabbed the deceased in defense of his life.

The state offered in evidence the confession of appellant, in which he gave as the reason for the killing, the deceased's attention to Sofia and his refusal to get away from the girl when appellant ordered him to do so.

Appellant offered proof of his good reputation, and filed a plea for suspension of sentence in the event of conviction. The jury disposed of such plea by their verdict assessing a 20 year term in the penitentiary.

Appellant relies for reversal upon seven bills of exception.

Bills Nos. 1, 2 and 3 he contends show error though he concedes that neither of such bills standing alone are of such nature as to require reversal.

Bill No. 1 complains that Ben S. Zamora was permitted, over the protest of appellant, to act as interpreter, though a witness the state expected to use in its proof of the voluntary character of the confession.

When it was made known to the trial judge that Zamora had acted as interpreter in the taking of appellant's written confession, and that the defense would seek to impeach the interpretation of such confession, another interpreter who was available should have been used.

The question of the use of the witness as interpreter has, however, been held to be one which rests in the discretion of the trial court. See Martinez v. State, 96 Tex. Cr. R. 138, 256 S.W. 289, wherein the court made the following observations:

"The record before us reflects no supporting proof of unfairness on the part of Tepfer (the interpreter) but, in view of the fact that it is shown that other interpreters were available, and further that there was a sharp clash between the testimony of the appellant and Tepfer on the issue of appellant's statements, which constituted the alleged confession, we suggest that on another trial under similar facts another interpreter be used. The state should avoid any imputation of unfairness, and especially is this true in dealing with those who are ignorant of our language and customs."

It may be observed that no issue was submitted to the jury regarding the correctness of the interpretation of the confession, and no request was made therefor.

Bill No. 2 relates to the manner of interrogation of the witnesses and the asking of leading questions, and questions calling for conclusions of the witnesses, while Bill No. 3 complains that the district attorney was permitted to testify as a witness in narrative form in response to questions of general form.

Appellant correctly concedes that such matters are within the discretion of the court.

Bills of Exception Nos. 4, 5 and 6 relate to matters of procedure in regard to the introductin of the confession.

Appellant complains that the court refused to permit counsel for appellant to see the statement for the purpose of cross-examination of the witnesses testifying before the court in the jury's absence.

Appellant says that though the witnesses were permitted to examine the statement in order to refresh their memory, appellant's counsel were denied the privilege of seeing the statement after the witnesses' memory had been refreshed.

And appellant insists that the court erred in allowing the confession to be read to the jury without proof being first made before the jury of its admissibility.

As we understand the record, it was made known to the court that appellant would contest the admissibility of the written confession. Before it had been offered, or exhibited, and before objection was made, the jury was retired and the court proceeded to hear evidence regarding the confession and its admissibility.

It was upon this hearing that appellant's counsel sought the opportunity of examinng the confession and was denied such privilege.

We express the view that appellant was entitled to inspect the document when it was placed in the hands of a witness and the witness testified that it refreshed his memory. And of course when the state sought to introduce the confession, appellant should have been permitted to examine it in connection with the making of his objection, as well as to determine whether or not he would object to its introduction.

However, it appears from the qualifications to these bills that, following the hearing before the court and the court's ruling that the confession would be admitted, appellant's counsel did examine the confession for some thirty-five minutes, and questioned the witnesses about it fully in the presence of the jury. No effort appears to have been made by appellant after inspecting the confession to examine the witnesses further in the absence of the jury, and we know of no useful purpose that might have been accomplished by such examination.

The admissibility of a confession is in the first instance a question for the determination of the court.

If the evidence raises an issue as to the facts necessary to be established in order to make the confession admissible such as whether the accused was properly warned, or whether the confession was voluntarily made, such issues are for the jury under appropriate instructions from the court.

The trial court permitted the introduction of the confession. But being of the opinion that the evidence raised the issue of its voluntary character and also the issue as to the giving of the necessary statutory warning, these issues were therefore submitted to the jury, and we find no complaint as to the manner of their submission.

We see no harm to appellant in the order in which the state's

evidence on the issues was offered. The sufficiency of the evidence to support the jury's consideration of the confession is not challenged.

Bill of Exception No. 7 relates to the closing argument of the state. This bill is insufficient to show reversible error, in that it fails to show that the argument was not in reply to or invited or provoked by the argument of appellant's counsel.

Appellant has not shown that the trial court in his rulings abused his discretion so as to prejudice the rights of appellant or to deprive him of a fair and impartial trial.

No reversible error appearing, the judgment is affirmed.

Opinion approved by the court.

ON APPELLANT'S MOTION FOR REHEARING.

BEAUCHAMP, Judge.

Appellant's motion for rehearing deals chiefly with the refusal of the court to consider his Bill of Exception No. 7, which is directed at the argument of the District Attorney and arises in the following manner, as set out in the bill:

In the final argument the district attorney told the jury, in explaining the general custom, that when one kills in self-defense the matter will be presented to the grand jury and he will be no-billed if they find it so. It seems he was interrupted at this point and the further statement which he started to make is not included. In response to the objection, the court said "I do not know that counsel made a point of it or not." The defendant then asked the court to instruct the jury to disregard the remark. In response to this request the court instructed the jury: "If the Jury understood that the indictment brought by the Grand Jury is evidence in this case, the court is instructing the jury it should disregard the same." Defendant then said, "May we have our bill?"

Qualifying the bill, the court says that when he gave the instruction to the jury the defendant offered no exception and no objection.

We concur in the treatment of this bill in the original opinion and, in addition, we think that it would not show error even if it had been completed according to the rule.

The motion presents quite an ingenious argument in favor of his contention that the bill shows that the argument was not made in reply to argument of the defendant, nor in any manner invited by the defendant. If we followed this argument, however, it would violate one of the firm rules of procedure that have been invoked by this court and by all courts of which we have any knowledge for all time. The state is required to so plead its case by the indictment that the court will not be required to indulge any presumption to complete the pleading. A like rule prevails when it becomes the burden of the defendant to show, by bill of exception, the procedure forming the basis for the bill. The motion asks this court to take the view that because objection was made and the court complied with the request to instruct the jury, we should then presume that the argument was not made in reply to any argument of defendant and was not invited by him—otherwise the court would not have sustained the objection. This we cannot do. If it was not invited by defendant he should have said so in his bill, which, if it appeared in the record with the approval of the trial court, would be conclusive and would comply with the rule.

If we followed the reasoning thus presented in the motion no case would ever be reversed because we would have to presume that the trial court followed the law and was perfect in his ruling. Again, it is argued that the trial court, in qualifying the bill, would have stated that the argument was invited or provoked by the action of the defense attorney. Such qualifications to bills sometimes appear in records, but the court does not always qualify bills even when justified by the facts.

Other argument presented is to like effect and we do not think the authorities discussed sustain appellant's contention.

The motion for rehearing is overruled.