**Stephen Lynn BARNHART, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 808–82.**

Court of Criminal Appeals of Texas, En Banc.

April 20, 1983.

Terrence Gaiser, Houston, for appellant.

John B. Holmes, Jr., Dist. Atty., Timothy G. Taft, and Mel Pechacek, Asst. Dist. Attys., Houston, Robert Huttash, State's Atty. and Alfred Walker, Asst. State's Atty., Austin, for the State.

## OPINION ON STATE'S PETITION FOR DISCRETIONARY REVIEW

TEAGUE, Judge.

Stephen Lynn Barnhart, appellant, was charged by complaint and information with promoting obscenity. The information alleges that appellant sold an obscene magazine, "3-Way Cum," to S.R. Jett. The record reflects that at the time Jett was a Houston police officer engaged in undercover vice operations. The allegation in the information, if proved, constitutes a violation of V.T.C.A., Penal Code, Sec. 43.23(a). Also see Sec. 43.21. Appellant was found guilty after a bench trial. The trial court assessed punishment at confinement in the Harris County Jail for three days and a $500 fine. The Houston First Court of Appeals reversed appellant's conviction, holding that appellant's pre-trial motion to quash the information, because the word "sodomy" was not more specifically pled, should have been granted. We granted the State's petition for discretionary review to consider the correctness of the opinion of the Court of Appeals. We will reverse the judgment of the Court of Appeals.

Appellant does not challenge the sufficiency of the evidence as to any of the allegations of the information. It is therefore adequate for our purposes to state that appellant, while employed as a clerk for a business establishment, Mr. Bob's Book Store, located at 5200 Telephone Road in Houston, sold S.R. Jett the magazine entitled "3-Way Cum."

Appellant also does not contend that the magazine, "3-Way Cum," is not constitutionally obscene. Nevertheless, pursuant to decisions of the Supreme Court and this Court, and contrary to the Court of Appeals, we have independently examined the magazine, "3-Way Cum," and its content, to make the determination whether the magazine and its content are constitutionally obscene. See *Jacobellis v. Ohio,* 378 U.S. 184, 84 S.Ct. 1676, 12 L.Ed.2d 793 (1964); *Miller v. California,* 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973); *Jenkins v. Georgia,* 418 U.S. 153, 94 S.Ct. 2750, 41 L.Ed.2d 642 (1974); *Longoria v. State,* 479 S.W.2d 689 (Tex.Cr.App.1972); *Hunt, et al. v. State,* 475 S.W.2d 935 (Tex.Cr.App.1972). We do not find any need to state in detail what the magazine, "3-Way Cum," depicts, re-

veals, or portrays. After examining the magazine and its content in its entirety, we have concluded that the magazine is unfettered by any pretense of being anything other than commercial obscenity or hard core pornography. The magazine, "3-Way Cum," is constitutionally obscene. See *Miller v. California,* supra; *Jenkins v. Georgia,* supra.

The Court of Appeals, in ordering appellant's conviction reversed, held that the information in this cause was subject to appellant's timely filed pre-trial motion to quash and the trial court erred by not granting the appellant's motion to quash. The Court of Appeals held that the word "sodomy," as used in the information, in the face of the motion to quash, had to be pled more specifically.

Appellant, in the motion to quash, contended, inter alia, that the word "sodomy," as used in the information, did not give him sufficient notice of what he was accused of committing. He further asserted that "[t]he word sodomy is so vague and indefinite that men of common intelligence must differ as to its meaning and application." We disagree.

The information in this cause alleges in pertinent part that appellant:

> did then and there unlawfully and knowing the content and character of the material, intentionally sell to S.R. JETT obscene material, namely one magazine entitled '3-Way Cum' which depicts patently offensive representations of actual and simulated sexual intercourse and sodomy.

Our research reveals that the etymology of the word "sodomy" reflects that it probably originated in biblical times. See *Genesis,* Chapter 19:1–11. Also see Vol. 25 *Encyclopedia Americana* at page 172; *Donoho v. State,* 643 S.W.2d 698 (Tex.Cr.App.1982). A usual dictionary definition for the word "sodomy" reflects it may mean the following: "Anal copulation of one male with another male." 1227 *The American Heritage Dictionary of the English Language.* Legally, however, the meaning of the word, "sodomy," has been expanded to include anal and oral copulation between members

of the same or of the opposite sex. In *Donoho,* supra, at page 700 of the opinion, this Court noted the following: "Thus the 'abominable and detestable crime against nature' was transformed into several forms of 'sodomy,' and when engaged in by humans came to be called 'deviate sexual intercourse.' "

"Deviate sexual intercourse" is defined in the Penal Code to mean the following: "(A) any contact between any part of the genitals of one person and the mouth or anus of another person; or (B) the penetration of the genitals of another person with an object." See V.T.C.A., Penal Code, Sec. 21.-01(1).

Appellant, however, was not charged with committing any form of deviate sexual intercourse. Instead, he was charged by complaint and information with committing the criminal offense of commercial obscenity by selling an obscene magazine, "3-Way Cum," to S.R. Jett, who turned out to be a Houston police officer then engaged in undercover vice operations. Therefore, the question we must decide is not what meaning a reasonable and prudent person might give to the word "sodomy," but, instead, we must decide whether the information in this cause sufficiently apprised appellant of what he was accused with committing.

In judging the sufficiency of the charging instrument, when challenged by a motion to quash, this Court only examines the accusatory pleading. *Drumm v. State,* 560 S.W.2d 944 (Tex.Cr.App.1978). Also see *Jeffers v. State,* 646 S.W.2d 185 (Tex.Cr.App.1983).

The allegation in the information in this cause, that relates to the content of the magazine, states in the conjunctive that the magazine contains "patently offensive representations of *actual and simulated sexual intercourse, sodomy and anal intercourse.*" [Emphasis Added]. The obscenity statute provides in part, see V.T.C.A., Penal Code, Section 43.21(a)(1)(B)(i), that material which depicts patently offensive representations of actual or simulated ultimate sexual acts, which includes sexual intercourse,

sodomy, and sexual bestiality, is obscene and, perforce, obscenity. Understandably, because the human mind is without limits as to what new ways it may devise or design as to how persons may engage in ultimate sexual acts, the statute, by its very wording, does not limit itself to all the kinds of ultimate sexual acts which may occur, but merely gives examples of what ultimate sexual acts may be depicted in material that could cause the material to become obscene.

 In this instance, the State chose to allege that the magazine, "3-Way Cum," depicted actual and simulated sexual intercourse and sodomy, thus placing appellant on notice that it would prove that the magazine depicted at least one, if not both of these forms of ultimate sexual acts. The word "sodomy," as used in the information, was merely descriptive of what the State had to prove. The information appellant sought through the motion to quash was thus essentially evidentiary. However, under the law, he was not entitled, by way of the motion to quash, to that information because the allegation went to the State's proof. It is axiomatic that a charging instrument must allege sufficient facts to give an accused person notice of precisely what he is charged with committing. However, unless a fact is essential to give an accused person notice of what he is accused of committing, the charging instrument need not plead the evidence that the State will rely upon to prove its case. Furthermore, as this Court has pointed out many times, it is the rare exception when a charging instrument, which has been drawn in the language of the involved penal statute, is held to be legally insufficient to provide the accused with notice of the charged offense. *May v. State,* 618 S.W.2d 333, 341 (Tex.Cr.App.1981), cert. granted, 454 U.S. 959, 102 S.Ct. 497, 70 L.Ed.2d 374 (1981), on remand, see 632 S.W.2d 751 (Tex.Cr.App. 1982). The information in this cause was drawn in accordance with the language of the obscenity statute. We have concluded that the complaint and information in this instance gave appellant sufficient notice of what offense he was accused of committing.

The trial court did not err in overruling appellant's motion to quash.

The Court of Appeals in this cause, as did the opinions of *Stonelake v. State,* 638 S.W.2d 619 (Tex.App.—Houston [1st], 1982), and *Taylor v. State,* 625 S.W.2d 839 (Tex. App.—Houston [14th] 1982) (No Petition for Discretionary Review), placed great emphasis upon the title of the obscene material, in this instance, "3-Way Cum." The court in this cause stated the following: "In our case, the *title* of the magazine described no particular type of sodomy, nor did the information limit or describe the type of sodomy depicted in the magazine. Therefore, appellant's motion to quash should have been granted." [Emphasis Added]. In *Stonelake,* supra, however, the *title* of the film in that cause was "Two-Way Butt Fuck." In *Stonelake,* the Court of Appeals, using *Taylor v. State,* supra, as its authority, stated the following as its reasons for rejecting the contention that the information was subject to the motion to quash: "Since the name of the film ["Two-Way Butt Fuck"] described one particular form of sodomy, the criminal information adequately informed the defendant of the allegedly obscene acts depicted in the film." In *Taylor,* the title of the magazine in that cause was "Ass Masters." The information in *Taylor* had alleged "anal sodomy," rather than merely the word "sodomy." In *Taylor,* Id., the Court of Appeals held: "The State, by alleging 'sodomy' rather than all three categories [sexual intercourse, sodomy, and sexual bestiality] and by further qualifying the word 'sodomy' with the modifier 'anal', limited the meaning of 'sodomy' so that it would be narrowly construed." Thus, the Court of Appeals in *Taylor* rejected the defendant's contention that the motion to quash should have been granted.

We believe the respective approaches the Courts of Appeals took in reaching the results they did caused them to overlook the fact that the word "sodomy," as used in the informations, was merely descriptive of what the State had to prove; an evidentiary fact the State did not have to more specifically plead in the charging instru-

ment for the reasons we have above stated. Of course, if complaint had been made in each of the above causes, as well as this cause, that the State had failed to prove what it alleged, then, of course, another matter would have been before those courts as well as this Court, and the analysis the Courts of Appeals used might then have been proper. However, in neither this cause, *Stonelake,* nor *Taylor,* supra, was complaint made that what was alleged by the State was not proved. For the reasons we have stated, the trial court did not err in overruling the appellant's motion to quash the information in this cause. Where in conflict with this opinion, the above decisions of the Courts of Appeals are overruled.

The judgment of the Court of Appeals is reversed and the judgment of the trial court affirmed.

ONION, P.J., and CLINTON, J., concur in the result.