The STATE of Texas, Appellant,

v.

Jimmy BARTEE and Janet Mangum, Appellees.

Nos. 04–94–00127–CR, 04–94–00128–CR.

Court of Appeals of Texas, San Antonio.

Dec. 30, 1994.

Concurring Opinion of Justice Rickhoff Feb. 15, 1995.

Steven C. Hilbig, Crim. Dist. Atty., Angela Moore, Asst. Crim. Dist. Atty., San Antonio, for State.

Bernard Campion, Campion & Campion, San Antonio, for Jimmy Bartee.

John M. Killian, Killian, Caspers & Associates, San Antonio, for Janet Mangum.

Before PEEPLES, RICKHOFF and ONION, JJ.

## OPINION

ONION, Justice.[1]

These appeals are taken by the State from pretrial orders setting aside indictments in trial court nos. 93–CR–7158A and 93–CR–7158B. *See* TEX.CODE CRIM.PROC.ANN. art. 44.01(a)(1) (Vernon Supp.1994); *State v. Eaves,* 800 S.W.2d 220, 224 (Tex.Crim.App. 1990). These orders were on motions to set aside the indictments which attacked the facial validity of the indictments.

These appeals present rather novel and interesting legal questions and are possibly a case of first impression as to whether a white-tailed deer can be the subject of the theft and criminal mischief statutes, and whether the State of Texas may be alleged as an owner in such situations. A question of the applicability of the theft statute to deer antlers is also presented but scant attention is given to this matter by the parties. The questions presented are based strictly on the face of the indictments and are matters of law only. Properly, no facts were developed at the pretrial hearing. For the reasons which follow, we conclude as a matter of law that the trial court erred in granting the motions to set aside the indictments. When the facts are eventually developed, however, the State may find that it has attempted to reach a bridge too far.

In separate but identical indictments (except for name) each appellee was charged with theft of a white-tailed deer, theft of deer antlers, and criminal mischief. One of these indictments, in pertinent part, alleged on or about the:

### COUNT I
#### PARAGRAPH A

13TH day of NOVEMBER, A.D., 1992, JIMMY BARTEE, hereinafter referred to as defendant, with intent to deprive the owner, namely: THE STATE OF TEXAS, of property, namely: ONE WHITE–TAILED DEER, did unlawfully appropriate said property by acquiring and otherwise exercising control over said property, said property being other than real property which had A VALUE of Seven Hundred and Fifty Dollars ($750.00) or more but less than Twenty Thousand Dollars ($20,000.00), without the effective consent of the owner;

#### PARAGRAPH B

And the Grand Jurors aforesaid, upon their oaths aforesaid, do further present in and to said Court that on or about the 13th day of November, A.D., 1992, and anterior to the presentment of this indictment, in the County of Bexar and State of Texas, JIMMY BARTEE, hereinafter referred to as defendant, with intent to deprive the owner, namely: THE STATE OF TEXAS,

---

1. Assigned to this case by the Chief Justice of the Supreme Court of Texas pursuant to TEX.GOV'T

CODE ANN. § 74.003(b) (Vernon 1988).

of property, namely: ONE PAIR OF WHITE–TAILED DEER ANTLERS, did unlawfully appropriate said property by acquiring and otherwise exercising control over said property, said property being other than real property which had A VALUE of Seven Hundred and Fifty Dollars ($750.00) or more but less than Twenty Thousand Dollars ($20,000.00), without the effective consent of the owner;

### COUNT II

And for the Grand Jurors aforesaid, upon their oaths aforesaid, do further present in and to said Court that on or about the 13th day of November, A.D., 1992, and anterior to the presentment of this indictment, in the County of Bexar and State of Texas, JIMMY BARTEE, hereinafter referred to as defendant, did then and there knowingly and intentionally damage and destroy tangible property of the STATE OF TEXAS, the owner, namely: ONE WHITE–TAILED DEER, without the effective consent of the said owner, by SHOOTING SAID WHITE–TAILED DEER and did thereby cause pecuniary loss in an amount less than Twenty Thousand Dollars ($20,000.00), without the effective consent of the owner;

Each appellee filed an amended motion to set aside the indictment in his or her case. Such motions argued that the respective indictments did not allege an offense or offenses against the laws of the State of Texas because a wild animal such as a white-tailed deer could not be the subject of the theft or criminal mischief statutes for the reason that there are no identifiable property rights in wild animals; the "State of Texas" cannot legally be the owner of a white-tailed deer as alleged in the indictment; and such deer "can not be associated with any given monetary value greater than $750."

In addition, the appellees contended that the theft statute was in pari materia with certain cited provisions of the Texas Parks and Wildlife Code; that the latter constituted the more "specific statute" and controlled over the general theft statute; and that since the "specific statute" related to a misdemeanor offense, *see* TEX.PARKS & WILDLIFE CODE

ANN. § 61.901(a) (Vernon 1991), the district court was without jurisdiction of the offenses.

A hearing was conducted on the amended motions to set aside or quash the indictments. The hearing concerned only the facial validity of the indictments as a matter of law. The trial court granted the motions and filed the following findings of fact and conclusions of law:

The white tailed deer named in the indictment is a "wild animal."

Pursuant to Section 1.011 of the Texas Wildlife Regulatory Act, "all wild animals . . . inside the borders of this state are the property of the people of this state." Therefore, alleging the State of Texas as "owner" in the indictment does not allege a criminal offense.

White tailed deer, being wild animals, are not subject to theft under Chapter 31 of the Texas Penal Code, nor subject to Criminal Mischief under Section 28.03 of the Texas Penal Code.

The acts alleging theft in the indictment constitute an "unlawful taking" which is a violation of the Texas wildlife [sic] Regulatory Act. This specific statute prevails over the general statute, Texas Penal Code, and therefore prosecution for any unlawful taking of wild animals must be prosecuted under the Wildlife Regulatory Act.

In accordance with the foregoing, the defendants' Motion to Quash is hereby granted.

It is not clear whether the trial court indulged in making a presumption as to the white-tailed deer named in the indictment being a wild animal, or improperly and sua sponte amended the indictments, or attempted to take some form of judicial notice. The finding was the foundation stone for the trial court's conclusions. After concluding that white-tailed deer are not subject to Chapter 31 of the Texas Penal Code (theft) nor to section 28.03 of that code (criminal mischief), the trial court decided that the acts of theft alleged must be prosecuted under the Texas

Regulatory Act,[2] a "specific statute" which controlled over the "general statute, Texas Penal Code." No particular statutes of the Wildlife Regulatory or Conservation act were mentioned and the entire Penal Code is referred to as a general statute in an apparent application of the in pari materia rule of statutory construction despite the earlier somewhat inconsistent conclusion that white-tailed deer are not subject to the theft statute. The trial court made no express finding or conclusion as to jurisdiction.

We have consolidated these cases for the purpose of appeal, and in each case the State has advanced the same points of error as follows:

### POINT OF ERROR NUMBER ONE

THE TRIAL COURT ABUSED ITS DISCRETION IN GRANTING APPELLEE'S MOTION TO SET ASIDE THE INDICTMENT IN RULING THAT THE STATE OF TEXAS CANNOT BE THE OWNER OF A WILD WHITE TAILED DEER BECAUSE OWNERSHIP IS A FACT ISSUE TO BE PROVEN AT THE TRIAL ON THE MERITS.

### POINT OF ERROR NUMBER TWO

THE TRIAL COURT ERRED IN GRANTING APPELLEE'S MOTION TO SET ASIDE THE INDICTMENT BECAUSE THE TRIAL COURT'S RULING THAT THE CHARGED CONDUCT DID NOT CONSTITUTE CRIMINAL OFFENSES IS ERRONEOUS BECAUSE THE TRIAL COURT PREJUDGED FACT ISSUES TO BE PROVEN AT TRIAL.

### POINT OF ERROR NUMBER THREE

THE TRIAL COURT ERRED IN MAKING A LEGAL CONCLUSION THAT THE PARKS AND WILDLIFE CODE GOVERNS BECAUSE IT IS MORE SPECIFIC, WHEN SUCH CLAIM WAS NOT RAISED IN THE MOTION OR AT THE HEARING ON APPELLANT'S MOTION.

The State's first and second points of error are not well expressed, but the real thrust of the argument presented thereunder is that the trial court erred in holding that under no circumstances could a white-tailed deer be property subject to the theft and criminal mischief statutes and that the State could not be alleged as an owner in such an indictment.[3]

■■■ The intent of article I, section 10 of the Texas Constitution is that an accused in a particular case must be furnished information upon which he may prepare his defense and this information must come from the face of the indictment. *Livingston v. State,* 739 S.W.2d 311, 321 (Tex.Crim.App.1987), *cert. denied,* 487 U.S. 1210, 108 S.Ct. 2858, 101 L.Ed.2d 895 (1988); *State v. Moreno,* 822 S.W.2d 754, 755 (Tex.App.—Corpus Christi 1992, no pet.). Moreover, all essential elements of an offense should be alleged in the indictment. An indictment which tracks the statutory language of the offense is generally sufficient in the face of a motion to set aside the indictment. *Beck v. State,* 682 S.W.2d 550, 554 (Tex.Crim.App.1985); *Barnhart v. State,* 648 S.W.2d 696, 699 (Tex.Crim.App. 1983). The ruling of the trial court in the instant case was not based on the lack of notice or the absence in the indictment of the constituent elements of the offenses charged therein, but upon the failure to charge any offense at all. Upon this point, the parties are seemingly in agreement.

Thus, the questions presented are ones of law based on the State's pleadings alone. They are not whether the indictments could have been skillfully drafted nor whether the State can subsequently prove at trial the allegations in the indictments.

■■■ The pleadings must state facts which if true show a violation of the law. *Posey v. State,* 545 S.W.2d 162, 163 (Tex. Crim.App.1977). An indictment is facially tested by itself as a pleading under the law.

---

**2.** Reference is apparently to the Texas Conservation Act of 1983. TEX.PARKS & WILDLIFE CODE ANN. § 61.001, et seq. (Vernon 1991).

**3.** The argument includes the contention that the trial court erred in holding that white-tailed deer antlers could not be the subject of the theft statute.

*Brasfield v. State*, 600 S.W.2d 288, 294 (Tex. Crim.App.1980).[4] Courts are not to indulge in any presumption to complete it. *Ex parte Millard*, 587 S.W.2d 703, 706 (Tex.Crim.App. 1979); *Sanchez v. State*, 155 Tex.Crim. 364, 235 S.W.2d 149, 153 (1950). With this background, we turn to the nature of the offenses stated in the indictments.

The theft statute in effect at the time of the alleged offenses[5], provided in pertinent part:

(a) A person commits an offense if he unlawfully appropriates property with intent to deprive the owner of property.

(b) Appropriation of property is unlawful if:

(1) it is without the owner's effective consent.

.    .    .    .    .

"Property" under the applicable theft statute[6] means:

(A) real property

(B) tangible or intangible personal property including anything severed from land; or

(C) a document, including money, that represents or embodies anything of value.

The property subject to theft as provided in section 31.01 of the Texas Penal Code encompassed all the specific items previously listed in the former Penal Code and now includes "anything capable of being pos-sessed or owned, whether tangible or intangible, and whether inherently valuable or merely representative of something of value." *See* Seth S. Searcy III and James R. Patterson, Practice Commentary 1973 [to Section 31.03]. Thus, in dealing with property subject to theft, we are dealing with a broad general definition without exclusions.

■ In order to be the subject of larceny the thing or property taken must be capable of individual ownership. *See* 52A C.J.S. *Larceny* § 2a. at 407 (1968). Theft and larceny are substantially the same offense. *Shannon v. State*, 170 Tex.Crim. 91, 338 S.W.2d 462, 465 (1960), *cert. denied*, 364 U.S. 935, 81 S.Ct. 386, 5 L.Ed.2d 369 (1961).

The criminal mischief statute in effect at the time of the alleged offense[7] provided in pertinent part:

(a) A person commits an offense if, without the effective consent of the owner:

(1) he intentionally or knowingly damages or destroys the tangible property of the owner. . . .

"Property" subject to criminal mischief had the same definition as "property" under the applicable theft statute at the time of the alleged offense.[8]

■ We find nothing in the Penal Code itself to exclude white-tailed deer and deer antlers from being the subject of the theft or criminal mischief statutes. We must exam-

---

4. The indictment can neither be supported nor defeated as such by what evidence is introduced at trial. *Brasfield*, 600 S.W.2d at 294. In a pretrial setting there is no constitutional or statutory authority for an accused to raise and a trial court to determine the sufficiency of the evidence to support or defeat an alleged element of an offense. *Rosenbaum v. State*, No. 974–93 —— S.W.2d ——, ——, 1994 WL 665576 (Tex.Crim. App. Nov. 30, 1994) (Clinton, J. dissenting, slip op. 12). Moreover, there is no Texas criminal pretrial procedure to test the sufficiency of the State's evidence. *Ex parte Andrews*, 814 S.W.2d 839, 841 (Tex.App.—Houston [1st Dist.] 1991), *pet. dism'd, Ex parte Chunn*, 831 S.W.2d 326 (Tex.Crim.App.1992); *State v. Jimenez*, 763 S.W.2d 436, 437 (Tex.App.—El Paso 1988, pet ref'd).

5. Act of May 27, 1985, 69th Leg., R.S., ch. 599, § 1, 1985 Tex.Gen.Laws 2244–45 (TEX.PENAL CODE ANN. § 31.03(a), (b)(1), since amended, TEX.PENAL CODE ANN. § 31.03 (Vernon

1994)). The statute has been described as "the general theft statute." *Cheney v. State*, 755 S.W.2d 123, 127 (Tex.Crim.App.1988); *Mills v. State*, 722 S.W.2d 411, 414–15 (Tex.Crim.App. 1986).

6. Act of May 24, 1973, 63rd Leg., R.S., ch. 399, § 1, 1973 Tex.Gen.Laws 883, 929 (TEX.PENAL CODE ANN. § 31.01(6)(A), (B), (C), since amended, TEX.PENAL CODE ANN. § 31.01 (Vernon 1994)).

7. Act of May 29, 1989, 71st Leg., R.S., ch. 1253, § 1, 1989 Tex.Gen.Laws 5055 (TEX.PENAL CODE ANN. § 28.03(a)(1), since amended, TEX.PENAL CODE ANN. § 28.03 (Vernon 1994)).

8. Act of May 24, 1973, 63rd Leg., R.S., ch. 399, § 1, 1973 Tex.Gen.Laws 883, 923 (TEX.PENAL CODE ANN. § 28.01(3), since amended, TEX.PE-NAL CODE ANN. § 28.01 (Vernon 1994)).

ine other statutes, caselaw and authorities in pursuit of an answer to the questions presented.

We begin by flipping through the pages of time. History reveals a long recognition of common ownership in game and wild animals and its developing subjectivity to governmental authority. At one point the law of ancient Athens forbade the killing of game. Roman law recognized common ownership, but imposed its regulations on the taking of wild animals. There is a history of varying controls exercised by the lawgiving power over the right of a citizen to acquire a qualified ownership in animals *feræ naturæ* evidenced by the Salic law, exemplified by the legislation of Charlemagne, and later by the Napoleonic Code which permitted police regulations to direct the manner in which common ownership was to be enjoyed. *See Geer v. Connecticut,* 161 U.S. 519, 522–26, 16 S.Ct. 600, 601–03, 40 L.Ed. 793 (1896).

The common law of England also based property in game upon the principle of common ownership, and therefore treated it as subject to governmental authority. *Geer,* 161 U.S. at 526, 16 S.Ct. at 603. In *State v. Ward,* 328 Mo. 658, 40 S.W.2d 1074, 1077 (1931) the Supreme Court of Missouri wrote:

At a very remote time the right and power of the sovereign authority to regulate and control the taking of wild animals were asserted and recognized. Originally, the title seems to have been regarded as vested in the sovereign as a personal prerogative; but, on the granting of Magna Charta and the Charter of the Forest by Henry III in 1225, the rights of the sovereign in unreclaimed wild animals were limited, and the rule of the Roman Law restricting the sovereign power to controlling and regulating the taking of such animals became the common law of England. The rule of the Civil Law recognizing the qualified title of the sovereign in wild animals, having been adopted by England, became the common law of the United States, and here the rule is that the general ownership of wild animals, as far as they are capable of ownership, is in the state, not as a proprietor, but in its collective sovereign capacity as the representative and for the benefit of all its citizens in common. *See also* 3A C.J.S. *Animals* § 6 at 477 (1973).

The attribute of government to control the taking of animals *feræ naturæ* (wild animals) which was recognized and enforced by the common law of England was vested in the American colonial governments where not denied by their characters or in conflict with grants of the royal prerogative. The power which the colonies possessed passed to the states with separation from the mother country, and remains in the states until the present time in so far as its exercise is not incompatible with rights which were conveyed to the federal government by the United States Constitution. *See Geer,* 161 U.S. at 528, 16 S.Ct. at 604.

In Texas, it has been said that the common law provides that animals *feræ naturæ* belong to the state and no individual property rights exist as long as the animal remains wild, unconfined, and undomesticated. *Jones v. State,* 119 Tex.Crim. 126, 45 S.W.2d 612, 613–14 (1931); *Wiley v. Baker,* 597 S.W.2d 3, 5 (Tex.Civ.App.—Tyler 1980, no writ). Unqualified property rights in wild animals can arise when they are legally removed from their natural liberty and made the subjects of man's dominion. *Jones,* 45 S.W.2d at 614. This qualified right is lost, however, if the animal regains its natural liberty. *Wiley,* 597 S.W.2d at 5.

This same theme is well expressed in 3A C.J.S. *Animals* § 8 at 478–79 (1973), where, in addition, it is stated:

Whether one has secured a property right to an animal *feræ naturæ* will be determined by whether the animal has been reduced to possession, and not by its habits.

If the person who reduces an animal from the wild state does so in compliance with the law, he gains ownership of it; otherwise, its ownership remains in the state. A wrongful reducing to possession of creature *feræ naturæ* cannot form the basis of ownership.

In *Runnels v. State,* 152 Tex.Crim. 268, 213 S.W.2d 545, 547 (1948), the Court of Criminal Appeals discussed when wild ani-

mals became subject to theft. The Court wrote:

> Wild animals are not subject to theft until they become the property of an owner. This they do immediately upon being reduced to possession. *Jones v. State,* 119 Tex.Cr.R. 126, 45 S.W.2d 612 [ (1931) ]. This seems to be the settled law in all jurisdictions. Mr. X captures a wildcat. It is a wildcat still, but it immediately becomes his property. The fisherman becomes the owner of his catch as soon as he secures possession. It is wild game still, but is the subject of theft.

*See also* 52A C.J.S., *Larceny* § 3(2) at 410 (1968).

The reason behind the principle expressed in *Runnels* is that the gist of the offense of theft consists in the misappropriation of another person's property. 19 Tex.Jur.3d *Criminal Law* § 559 at 187 (1982); *Goodson v. State,* 32 Tex. 121, 124 (Tex.1869). *Jones* recognized that when wild animals, including deer, become property it was such property that would pass to the executors and administrators of a deceased person's estate. *Jones,* 45 S.W.2d at 613–14; 1 Halsbury's Law of England § 799. Thus, it is legally possible for an individual to have qualified property rights in a wild animal, particularly a deer. *See* 4 Am.Jur.3d *Animals* § 15 at 262 (1962) (Rights of Individuals, Generally).

Most states of this nation have enacted laws for the protection and preservation of game. It has been said that statutes placing ownership and control of wild animals in the state are but an expression of both the civil and the common law on the subject. *Atkinson v. Denver,* 118 Colo. 322, 195 P.2d 977, 980 (1948). The power to so legislate is not normally questioned. *Geer,* 161 U.S. at 528, 16 S.Ct. at 604. The Texas legislature

may make laws for the protection of public rights in wild game including the right to regulate the method of hunting. *Dobie v. State,* 120 Tex.Crim. 72, 48 S.W.2d 289, 290 (1932).

Section 1.011(a) of the Texas Parks and Wildlife Code provides "(a) All wild [9] animals, fur-bearing animals, wild birds, and wild fowl inside the borders of this state are *the property of the people of this state.*" TEX.PARKS & WILDLIFE CODE ANN. § 1.011(a) (Vernon 1991) (Emphasis added). The emphasized phrase or the phrase "property of the public" are found in all the statutory forerunners of section 1.011 as far back as 1907.[10] With regard to the ownership of wild animals, we do not find that the various statutes enacted over the years have departed from the common law. The statutory phrase "property of the people of this state" does not appear to have been interpreted by our courts. Despite its use in various statutes over the years, our courts have consistently referred to the ownership of wild animals as being in "the state" or belonging to "the state." *See Dobie,* 48 S.W.2d at 290; *Jones,* 45 S.W.2d at 613; *Wiley,* 597 S.W.2d at 5.

The duly elected members of the Texas legislature have enacted a comprehensive Parks and Wildlife Code,[11] which includes a wildlife conservation act.[12] The Parks and Wildlife Department is established as a state agency under the policy direction of the Parks and Wildlife Commission. *See* TEX.PARKS & WILDLIFE CODE ANN. §§ 11.011, 11.012 (Vernon 1991).

While the legislature has declared that all wild animals are property of the people of this state, these elected representatives of the people, in order to protect the common ownership and to properly regulate and pro-

---

9. " 'Wild,' when used in reference to an animal, means a species, including each individual of a species, that normally lives in a state of nature and is not ordinarily domesticated." TEX. PARKS & WILDLIFE CODE ANN. § 1.101 (Vernon 1991). A white-tailed deer is a game animal. *See* TEX.PARKS & WILDLIFE CODE ANN. § 63.001(a) (Vernon Supp.1994).

10. *See* Act of April 19, 1907, 30th Leg., R.S., ch. 144, § 1, 1907, Tex.Gen.Laws 278, *amended by*

Act of March 18, 1919, 36th Leg., R.S., ch. 157, § 1, 1919 Tex.Gen.Laws 289, *amended by* Act of April 1, 1925, 39th Leg., R.S., ch. 172, § 1, 1925 Tex.Gen.Laws 387.

11. TEX.PARKS & WILDLIFE CODE ANN. § 1.001, et seq. (Vernon 1991).

12. TEX.PARKS & WILDLIFE CODE ANN. § 61.001 et seq. (Vernon 1991).

tect wild animals and game, have entrusted a state agency with the power and responsibility to do so under statutes enacted, and by regulations adopted, as provided by law. The power of the state agency is to be exercised like all other powers of government as a trust for the benefit of the people and not as a prerogative for the advantage of the government or for the benefit of private individuals. The very purpose of the wildlife conservation act "is to provide a comprehensive method for the conservation of an ample supply of wildlife resources on a statewide basis to insure reasonable and equitable enjoyment of the privileges of ownership and pursuit of wildlife resources." TEX.PARKS & WILDLIFE CODE ANN. § 61.002 (Vernon 1991). The law is made flexible to enable the Parks and Wildlife Commission to deal effectively with changing conditions. *Id.* The State, through its agency, represents the common ownership of wild animals. The people have the right to change this arrangement if they so desire. The State, as trustee, has the power to regulate the taking and acquisition of property in wild animals by individuals by imposing such restrictions and conditions as the legislature may see fit. Wholly apart from its authority to protect the common ownership of wild animals, the right of the State to preserve wild animals cannot be disputed due to the undoubted existence of a police power to that end. *See* 4 Am.Jur.2d *Animals* § 14 at 261 (1962); *Dobie,* 48 S.W.2d at 290; *Ex parte Blardone,* 55 Tex. Crim. 189, 115 S.W. 838, 840 (1909).

In the Parks and Wildlife Code the legislature has provided for scientific breeders of white-tailed deer. TEX.PARKS & WILDLIFE CODE ANN. § 43.351 et seq. (Vernon 1991 & Supp.1994). The Parks and Wildlife Department is authorized to issue permits to qualified persons to possess white-tailed deer for propagation, management, and scientific purposes. TEX.PARKS & WILD-LIFE CODE ANN. § 43.352 (Vernon Supp.1994). Among the privileges of the permit is the right of the scientific breeder to engage in the business of breeding white-tailed deer, and for that purpose to hold in possession and in captivity white-tailed deer for propagation or sale. TEX.PARKS & WILDLIFE CODE ANN. §§ 43.352, 43.357 (Vernon Supp.1994). The implication is that the proceeds of any sale may be retained by the scientific breeder. Permits may also be granted to individuals by the department for the trapping, transportation and transplanting of "wild white-tailed deer" from areas overpopulated by such deer to other areas of the state, all without cost to the State government. TEX. PARKS & WILDLIFE CODE ANN. § 63.007 (Vernon 1991). There may be other examples, but clearly while acting under permits from the State, the scientific breeder and the transporter would legally have qualified rights of ownership or possession of the white-tailed deer. As we have already seen, wild animals legally reduced to possession may be the subject of theft. *Runnels,* 213 S.W.2d at 547. Likewise, the white-tailed deer in the legal possession of a scientific breeder or transporter with the consent of the State may be the subject of theft,[13] and for that matter, criminal mischief as well.[14] It must be recognized then that the prosecution may bring theft and criminal mischief charges concerning white-tailed deer but only in limited and very circumscribed situations. A white-tailed deer in its natural state of liberty cannot be the subject of the theft and criminal mischief statutes. *See Runnels,* 213 S.W.2d at 547. This is undoubtedly one of the reasons why we have been unable to find a single reported case in Texas involving the theft of deer from the State. The prosecutor in charging theft or criminal mischief involving a white-tailed deer must be extremely careful in choosing the proper allegations in the State's pleadings, but also

13. TEX.PENAL CODE ANN. § 31.10 (Vernon 1994) provides: "It is no defense to prosecution under this chapter [theft] that the actor has an interest in the property or service stolen if another person has the right of exclusive possession of the property."

14. TEX.PENAL CODE ANN. 28.05 (Vernon 1994) provides: "It is no defense to prosecution under this chapter [arson, criminal mischief, property damage] that an actor has an interest in the property damaged or destroyed if another person also has an interest that the actor is not entitled to infringe." *See also Vanderburg v. State,* 843 S.W.2d 286, 288 (Tex.App.—Houston [1st Dist.] 1992), *rev'd and remanded on other grounds,* 874 S.W.2d 683 (Tex.Crim.App.1994).

keenly aware of the facts which will support those allegations. Otherwise, the prosecutor may be up the creek without the proverbial paddle.

■ Deer antlers, white-tailed or otherwise, may be lawfully acquired and may be the subject of theft. The Parks and Wildlife Commission by proclamation is required to authorize and regulate the sale, purchase, and possession after purchase of deer antlers. TEX.PARK & WILDLIFE CODE ANN. § 62.021 (Vernon 1991). The Commission had done this. *See* 31 T.A.C. § 65.400, et seq. (West 1994). Under these rules, deer antlers may be owned and possessed if legally taken or obtained, and may even be sold, purchased or possessed after purchase, if the rules requiring an invoice are followed. 31 T.A.C. § 65.402 (West 1994). Many individuals as well as the State or its agencies may be the possessors or owners of legally obtained deer antlers. These antlers would be tangible personal property within the definition of "property" in section 31.01 of the Texas Penal Code.[15]

■ We now turn to the question of whether alleging the "State of Texas" as "owner" prevented the instant indictments from alleging criminal offenses. The requirement under article 21.08 of the Texas Code of Criminal Procedure[16] that the name of the owner of the property from whom it was unlawfully taken be alleged in the indictment is a rule of pleading, not a part of the definition of the offense of theft. *Freeman v. State*, 707 S.W.2d 597, 603 (Tex.Crim.App. 1986).

"Owner" under section 1.07(24) of the Texas Penal Code in effect at the time of the alleged offenses[17] "means a person who: (A) has title to the property, possession of the property, whether lawful or not, or a greater right to possession of the property than the actor."

A corporation can be the owner of property under the statute and so can the State. It is obvious that a corporation or the State cannot testify or give direct testimony of lack of consent. *Wells v. State*, 608 S.W.2d 200, 202 (Tex.Crim.App.1980). Ownership in a corporation or other association can only be proven circumstantially by testimony of its directors, officers or employees, and lack of consent can be shown in the same manner. *Wells*, 608 S.W.2d at 203. "Where a large entity is involved, cases of 'without effective consent' come up frequently and often with some vexation." *Milo v. State*, 663 S.W.2d 483, 486 (Tex.App.—Beaumont 1983, no pet.). Whenever a corporation or the State is the owner of property that has been stolen, it is preferable pleading practice to allege "special ownership" in a natural person acting for the corporation or the State. *See Sowders v. State*, 693 S.W.2d 448, 451 (Tex.Crim.App.1985); *Simpson v. State*, 648 S.W.2d 1, 2 (Tex.Crim.App.1983); *Ellett v. State*, 607 S.W.2d 545, 547 (Tex.Crim.App. 1980); *Harris v. State*, 846 S.W.2d 960, 962 (Tex.App.—Houston [1st Dist.] 1993, pet. ref'd). While this practice is clearly desirable, there is no rule of law inhibiting the name of a corporation as the owner in an indictment for theft. *Modica v. State*, 94 Tex.Crim. 403, 251 S.W. 1049, 1050 (1923). The name of a corporation or the State in an indictment for theft of property is permissible. *See Middleton v. State*, 476 S.W.2d 14, 17 (Tex.Crim.App.1972); *Boyette v. State*, 632 S.W.2d 915, 919 (Tex.App.—Houston [14th Dist.] 1982, pet. ref'd).

■ Allegations of ownership under article 21.08 apply to special owners as well as general owners and are also applicable to corporations and the State. *See Walling v. State*, 437 S.W.2d 563, 564 (Tex.Crim.App. 1969). Even in the face of a motion to quash

15. TEX.CODE CRIM.PROC.ANN. art. 21.24(b) (Vernon 1989) provides: "(b) A count may contain as many separate paragraphs charging the same offense as necessary, but no paragraph may charge more than one offense." A question may be raised as to whether the theft of the deer antlers alleged in Count I, Paragraph B of the instant indictments charged the same offense as alleged in Count I, Paragraphs A (theft of a deer).

16. TEX.CODE CRIM.PROC.ANN. art. 21.08 (Vernon 1989).

17. Act of May 24, 1973, 63rd Leg., R.S., ch. 399 § 1, 1973 Tex.Gen.Laws 883, 888, since amended, TEX.PENAL CODE ANN. § 1.07(35) (Vernon 1994).

the indictment, there is no need to specify the particular type of ownership upon which the prosecution will rely. Statutory terms like "owner" are essentially evidentiary and need not be alleged in the indictment. *Rico v. State,* 707 S.W.2d 549, 557 (Tex.Crim.App. 1983). Whether the owner has title, possession or greater right to possession will not benefit a defendant, and is not a necessary component of the required notice. *Marrs v. State,* 647 S.W.2d 286, 289 (Tex.Crim.App. 1983). Thus, the type of ownership need not be set out in the indictment. Any valid form of ownership may be alleged. *The State is not required to explain in a theft indictment why a particular person (or entity) was named as owner of the property taken. Silva v. State,* 635 S.W.2d 775, 779 (Tex.App.—Corpus Christi 1982, pet. ref'd).

We conclude that the allegation of the State of Texas as the owner in the different counts of the instant case did not, as a matter of law, prevent the proper allegations of the criminal offenses.[18] The argument advanced by the State in its first two points of error is sustained.

■ In the third point of error, the State argues that the trial court erred in its conclusion that the Parks and Wildlife Code controlled as a specific statute because such claim was never raised. The State overlooks the amended motions to set aside the indictments, although the contention was not pursued during the hearing on the motions. Nevertheless, the trial court concluded that the "acts alleging theft" (of a white-tailed deer and deer antlers) "constitute an 'unlawful taking'" in violation of the Texas Wildlife Regulatory Act,[19] a "specific" statute which prevails over the "general statute, the Texas Penal Code."

This conclusion is based on the premise that the particular white-tailed deer named in the indictment was a "wild animal," a finding that the trial court made without evidentiary support. As noted earlier, it is not clear whether the trial court in making this finding indulged in making a presumption, improperly and sua sponte amended the indictment or attempted to take some form of judicial notice. In view of our holding that qualified property rights may be legally acquired in a white-tailed deer and that such deer may be the subject of theft in limited circumstances, the trial court's finding that the particular white-tailed deer was a wild animal is undermined. It is this finding or conclusion which is the foundation stone upon which all the other conclusions rest. For this reason, the challenged conclusion of the trial court must also fall.

Moreover, the Act is a part of the Texas Parks and Wildlife Code and contains a number of statutes, as does the Penal Code. It is impossible to determine from the trial court's conclusion which statute or statutes it had in mind unless it can be said that the trial court found the Act and the Penal Code were in pari materia, and that the Act would control over the Penal Code.

■ The rule of in pari materia is a principle of statutory construction or interpretation that the courts may use in determining legislative intent in enacting a particular statute or statutes. Statutes that deal with the same general subject, have the same general purpose, or relate to the same person or thing or class of persons or things, are considered to be in pari materia although they contain no reference to one another, and although they may have been enacted at different times. The rule has been discussed in numerous cases. *See e.g. Cheney v. State,* 755 S.W.2d 123 (Tex.Crim.App.1988); *Mills v. State,* 722 S.W.2d 411 (Tex.Crim.App. 1986); *Ex parte Smith,* 849 S.W.2d 832 (Tex. App.—Amarillo 1992, no pet.); *Cullen v. State,* 832 S.W.2d 788 (Tex.App.—Austin 1992, pet. ref'd). The rule is considered with the relationship between general and special statutory provisions. *See* TEX.GOV'T CODE ANN. § 311.026 (Vernon 1988); *Mills,* 722 S.W.2d at 414. Statutes, however, which do not deal with the same subject, persons or purpose are not in pari materia, and should

---

18. While most of the authorities cited above relate to theft cases we perceive no reason why they are not applicable to the allegation of a criminal mischief offense.

19. TEX.PARKS & WILDLIFE CODE ANN. § 61.001 et seq. (Vernon 1991 & Supp.1994) (Wildlife Conservation Act of 1983, formerly the Wildlife Regulatory Act).

be construed separately and in accordance with the plain wording of the statute. *Cheney*, 755 S.W.2d at 127. Section 61.002 of the Texas Parks and Wildlife Code relates to the chapter known as the Wildlife Conservation Regulatory Act of 1983 (formerly Wildlife Regulatory Act). As mentioned earlier, the purpose of this chapter is to provide a comprehensive method for the conservation of wildlife resources on a statewide basis and to insure reasonable and equitable enjoyment of the privileges of ownership and pursuit of wildlife resources. The general objectives and purposes of the Texas Penal Code are to establish a system of prohibitions, penalties and correctional methods to deal with criminal conduct. TEX.PENAL CODE ANN. § 1.02 (Vernon 1994). We do not agree that the Act and the Penal Code in their entirety deal with the same purpose so as to be construed together in this particular case under the statutory construction rule of in pari materia. In this regard, the trial court erred in its conclusion. This is not to say that a particular statute of the Wildlife Conservation Act of 1983 could not be in pari materia with a particular statute of the Penal Code, but that was not the conclusion of the trial court in the instant case. While the State's third point of error as framed is without merit, the challenged conclusion must fall for the reasons stated.

### SUMMARY

█ White-tailed deer in their natural state of liberty are not the proper subject of the criminal offenses of theft and criminal mischief. In limited and circumscribed situations, however, qualified property rights may be legally acquired in white-tailed deer and these deer may be the subject of theft and criminal mischief. White-tailed deer antlers legally acquired may also be the subject of theft. The State of Texas may be alleged as "owner" of property in theft and criminal mischief cases. An indictment returned by a legally constituted grand jury and valid on its face is sufficient to mandate a trial of the

charge on its merits. *Crocker v. State*, 573 S.W.2d 190, 204 (Tex.Crim.App.1978).

The trial court erred in granting the motions to set aside the indictments for the reasons it stated. The essence of each of the State's points of error is sustained. In rejecting the particular attacks made in the trial court upon the validity of the indictments, we do not, by any means, classify the indictments as model indictments.[20]

When and if the facts are eventually developed in this cause, this appeal may have been an exercise in futility. The State may have won the battle (on pleadings), but may lose the war (of prosecution).

The orders setting aside the indictments are reversed and the causes are remanded to the trial court.

Before PEEPLES,[1] RICKHOFF and ONION, JJ.

RICKHOFF, Justice, concurring.

[Filed Feb. 15, 1995]

A majority opinion written by Justice Onion was issued on December 30, 1994.

I agree with the majority "that white-tailed deer in their natural state of liberty cannot be the subject of theft." As the majority observes, animals are either wild (ferae naturae) or domestic (domitae naturae). No one, not even the state, "owns" wild animals, at least in the proprietary sense, when they are in their natural habitat.

I also agree that we cannot assume, as the trial judge apparently did in this case, that "[t]he white-tailed deer named in the indictment is a 'wild animal,'" or as the majority says, that the deer was "in its natural state of liberty."

The majority observes that white-tailed deer in the possession of a scientific breeder or transporter may be the subject of theft or criminal mischief, or that "[t]here may be other examples" that allow such qualified rights of ownership or possession of white-tailed deer. If this is so, then I believe there are many white-tailed deer that are privately

---

**20.** *See* note 14. Moreover, while the State's brief, in connection with Count II (criminal mischief) mentions "a shooting with a gun," the indictment itself refers only to a "shooting."

**1.** Justice Peeples not participating.

owned in Texas that could be the subject of a theft or criminal mischief indictment and in the future there will be many thousands.

If the majority is merely holding that it is possible for a white-tailed deer to become personal property and that, accordingly, it will be difficult for the State to prove the deer in this case was owned by the State, then I agree. Here, the State was alleged in very general terms to be the owner of a particular deer. As the majority correctly notes, this may be sufficient for purposes of an indictment, but how is it going to prove this deer was reduced to possession by the State? This, I believe, is the "bridge too far." *See* CORNELIUS RYAN, A BRIDGE TOO FAR (1974).

Recognizing that this is not the case where ownership of white-tailed deer should be resolved, I want to follow on the majority's surmise that there may be "other examples."

While "wild" white-tailed deer meet the definition of "wildlife" found in the Texas Parks and Wildlife Code, *see, e.g.,* TEX.PARKS & WILDLIFE CODE ANN. § 61.005 (Vernon 1991), the ownership of any wild animal, as personal property, is easy enough to answer: no one owns wild animals.

Possibly the earliest case to address the issue of ownership of wild animals is *Pierson v. Post,* 3 Cai R. 175 (N.Y.Sup.Ct.1805) which held that "property in [wild] animals is acquired by occupancy only." A century later, Justice Holmes agreed that occupancy, or possession, was a necessary prerequisite to obtaining a property interest in wild animals. He reaffirmed *Pierson* by stating that "[w]ild birds are not in the possession of anyone; and possession is the beginning of ownership." *Missouri v. Holland,* 252 U.S. 416, 434, 40 S.Ct. 382, 384, 64 L.Ed. 641 (1920). The result is that "[a]s a general rule, wild fish, birds and animals are owned by no one. Property rights in them are obtained by reducing them to possession." *United States v. Long Cove Seafood, Inc.,* 582 F.2d 159, 163 (2d Cir.1978). Wild animals are not the property of the landowner, whether it be an individual, a neighborhood association or any other entity, but are common property whose control and regulation are to be exercised "as a trust for the benefit of the people." *Geer*

*v. Connecticut,* 161 U.S. 519, 528–29, 16 S.Ct. 600, 604, 40 L.Ed. 793 (1896). Federal and state authority over wildlife is not based on ownership, but upon the state's police power to preserve and regulate an important resource. *Toomer v. Witsell,* 334 U.S. 385, 402, 68 S.Ct. 1156, 1165, 92 L.Ed. 1460 (1948). As the Supreme Court declared, "[I]t is pure fantasy to talk of 'owning' wild fish, birds, or animals. Neither the States nor the Federal Government ... has title to these creatures until they are reduced to possession by skillful capture." *Douglas v. Seacoast Products, Inc.,* 431 U.S. 265, 284, 97 S.Ct. 1740, 1751, 52 L.Ed.2d 304 (1977).

In 1909, the Court of Criminal Appeals of Texas was faced with a constitutional challenge by an individual who was arrested for trying to sell two ducks he killed. He contended "that the right to alienate property is a natural and necessary consequence to the ownership of property, and is a fundamental right and privilege guaranteed by the Constitutions of the United States and the State of Texas, ...." The court recognized the police power of the state because "the absolute ownership of wild game is vested in the people of the state and that such is not the subject of private ownership." The court went on to recognize that individuals can only acquire ownership of wild animals in a qualified way, and the legislature therefore had the right to restrict the sale of the wild ducks that had been killed. *Ex parte Blardone,* 55 Tex.Crim. 189, 115 S.W. 838, 840 (1909). Previously, it was common law that an individual acquired an absolute interest in game he killed. 4 Am.Jur.2d Animals § 16 at 263 (1962). If the state, through legislative enactment, has the police power to change the common law and subject individuals to restrictions and conditions on how they acquire wild animals, then if follows that it may control the acquisition of wild animals as they have with § 44.002 of the Parks and Wildlife Code, which prohibits the captivity or propagation of a game animal without a license. *See* TEX.PARKS & WILDLIFE CODE ANN. § 44.002 (Vernon 1991). However, it is the view of this writer that the state has not defined wild animals so as to absolutely exclude from ownership all white-tailed deer

within the boundaries of the state. This would be unwise, impractical and would conflict with the purpose of the wildlife code. Just because the state heavily regulates personalty such as handguns or automobiles, it does not follow that individuals may not own them. Historically, the reason an individual acquired only a special, limited or qualified property in wild animals was that they may escape his control and revert to the wild after they are brought under his domain—not because the state defined all of a certain species forever wild and, therefore, subject to restrictions. Unless they are acquired unlawfully, wild animals confined by a landowner are no longer wild and may become property that could pass through executors, generate tort liability for their owners, or become the subject of conversion or theft under a similar indictment.

While we are across the bridge and beyond the record with our suppositions regarding how the state will satisfy their ownership under the indictment, I offer this example of deer as personalty.

Our state legislature has defined "wild" as any animal that "normally lives in a state of nature and is not ordinarily domesticated." TEX.PARKS & WILDLIFE CODE ANN. § 1.101 (Vernon 1991). Furthermore, the legislature declared that, a white-tailed deer is a game animal. *See* TEX.PARKS & WILDLIFE CODE ANN. § 63.001(a) (Vernon Supp.1994). Any entity that acquires a white-tailed deer from a breeder and a permit from the state can confine that deer and the offspring, and reduce them to their care. TEX.PARKS & WILDLIFE CODE ANN. § 43.352 (Vernon Supp.1995). The state, in an effort "that native species may be preserved," extended their regulations over all white-tailed deer, even when confined under permit, but in doing so the legislature specifically allowed the most common method of reducing wild game to man's domain—"high fences." TEX.PARKS & WILDLIFE CODE ANN. § 43.366 (Vernon Supp.1995). I am aware of no challenge that has ever been brought in Texas to the prohibition against the captivity of game animals or the prohibition against containing them in areas larger than 320 acres. TEX.PARKS & WILDLIFE CODE ANN. § 43.360 (Vernon Supp.1995).

Nor am I aware of anyone who has been required to remove game-proof fencing. One would think that this provision prohibiting captivity would not apply to an area large enough to maintain a natural habitat. If there exists a high percentage of privately held lands in Texas with deer-proof fencing, many thousands of deer could become the property of landowners based on common law principles. In other words, if white-tailed deer are lawfully acquired by a licensed breeder from another state pursuant to the allowed exemption and sold to a permit-holding individual with a ranch with a deer-proof fence, and that deer remains so confined in this habitat (which is natural in all ways except that the animal and their increase cannot escape the landowner's domain), is it not the landowner's white-tailed deer? As the facts are developed in appropriate cases, we may find that an increasing number of white-tailed deer in Texas are privately owned and may be the subject of theft.

In given cases our courts could recognize the current reality in Texas that deer, and many other terrestrial game animals and fish, are held in private game-proof preserves, parks or lakes and ponds by landowners who have entirely reduced these creatures to their domain and have acquired ownership in them in a proprietary sense. While wildlife management has presented very difficult political issues for our legislature to balance it should be clear that once high fences were allowed, much of the responsibility for preserving and increasing our wildlife has fallen to the owners of these fenced preserves. With that responsibility should also come the rights, duties and liabilities of ownership.

The legislature has not clearly stated that individuals may not own white-tailed deer lawfully acquired, nor am I aware of any case that so holds. Until a case is presented with a sufficient record allowing us to properly rule, the status of confined but lawfully acquired and maintained white-tailed deer in Texas will be unclear.